## FIRST NAT. BANK OF BRECKENRIDGE v. FIRST NAT. BANK OF STAMFORD.

### No. 981.

Court of Civil Appeals of Texas. Eastland.

June 3, 1932.

Rehearing Denied Oct. 7, 1932.

Goggans & Allison, of Dallas, for appellant.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, and B. P. Davenport, of Stamford, for appellee.

FUNDERBURK, J.

This is a suit by the First National Bank of Stamford, hereinafter called the Stamford bank, against the First National Bank of Breckenridge, hereinafter called the Breckenridge bank, to recover the sum of $11,016.15, being the balance of a deposit in the original amount of $15,000 credited by the latter bank to the former. R. V. Colvert, president and executive officer of the Stamford bank, on June 7, 1930, wrote to M. E. Daniel, president of the Breckenridge bank, as follows:

"I may need the use of $10,000.00 of your funds for a few days. If it is convenient for you to let me have this money I would be glad to make a demand note, sending it to you for credit of The First National Bank of Stamford for my use. I can return the funds any day that you may need it. I have a line of credit from one of the big New York banks, however, I do not wish to go to them for any money until along about the first of July. Hoping everything is coming good with you, and with kind regards,

"Very truly yours,      R. V. Colvert."

Before the Breckenridge bank made reply, Colvert called Daniel over long-distance telephone and asked about the loan. He stated to Daniel that the Stamford bank was getting low and he wanted to increase the cash reserve of said bank. Daniel, for the Breckenridge bank, told Colvert he would loan him the money, but that the proceeds of the $15,000 note to be made by Colvert therefor would be deposited to the credit of the Stamford bank and could not be drawn upon by said bank but must remain in the said Breckenridge bank and be subject to the payment of said note, which could be charged to said account at any time the Breckenridge bank desired to do so, and that interest at 2 per cent. would be paid on the balance kept in the bank until the note (which was to draw 6 per cent.) was discharged. Daniel, in this conversation, told Colvert that, unless this agree-

ment was made, he would not loan him the money, and Colvert agreed that the money would remain in defendant bank until the $15,000 note was paid; that 2 per cent. would be paid on the amount kept on deposit; that the note would draw 6 per cent. interest; and that the account was subject to be charged with the note so executed by R. V. Colvert at any time the Breckenridge bank desired. Following this conversation the Breckenridge bank wrote Colvert as follows:

"Dear Mr. Colvert:

"I enclose herewith blank demand note for your convenience in handling the loans mentioned in your letter of today. We will be glad to handle this for you as per your letter for either of the amounts mentioned therein.

"With kindest personal regards, I am,
    "Yours truly,    M. E. Daniel, President,
                    "Per Secretary."

About four days after receipt of the above letter, Colvert wrote Daniel, as president of the defendant bank, as follows:

"As per your letter of the 9th inst., I am enclosing herewith my $15,000.00 note, dated June 16th, due on demand. Please place proceeds of this paper to the credit of The First National Bank of Stamford, Texas, for my use.

"Thanking you for this accommodation, and with kindest personal regards,
    "Very truly yours,    R. V. Colvert."

Upon receipt of the last-named letter, the Breckenridge bank credited the Stamford bank with the sum of $15,000, the amount of the note, and mailed to the latter the usual credit card. The same day that this note was mailed to the Breckenridge bank, R. V. Colvert made out in his own handwriting a deposit slip for $15,000, and had the bookkeeper credit same to his personal account and charge the amount thereof on the books to the Breckenridge bank. At that time the individual account of Colvert was overdrawn $10,518.19, and, at the close of business the same day, was overdrawn $3,810.24. All the entries were made by the bookkeeper solely from the deposit slip, without any advice from the Breckenridge bank. Subsequently, one draft for $5,000 against said deposit in the Breckenridge bank was presented and was paid, upon the assumption that such sum was temporarily needed by the Stamford bank and would be replaced. No demand was ever made for the restoration of said $5,000. The Breckenridge bank mailed several statements to the Stamford bank, showing the state of the account, one mailed November 29, 1930, showing a balance of $11,016.14. At that time there had been no change in the account outside of the said $5,000 draft, except the monthly interest which had been credited. Two of the statements were rendered in response to requests of bank examiners for verification of accounts. On December 10, 1930, the Breckenridge bank applied the balance of the deposit to R. V. Colvert's unpaid note, wired the Stamford bank of such action, and refused payment of the draft of the Stamford bank upon it for said balance of $11,016.14. No officer or director of the Stamford bank, other than Colvert, had any actual knowledge of the agreement of Colvert with the Breckenridge bank. R. V. Colvert, at the time of all the transactions mentioned, was insolvent; but neither bank had actual knowledge of such fact. The Breckenridge bank gave no notice to the Stamford bank concerning the nature of the transaction had through Colvert, save such, if any, as was imputed to it by the knowledge of Colvert. Colvert had no authority to make the agreement for the Stamford bank that the deposit would not be drawn upon or that the note could be charged to the account.

Upon substantially the above facts the trial court concluded "that the said Colvert, at the time he was borrowing the money from the First National Bank of Breckenridge, was acting absolutely in his own behalf and without the knowledge of the other officers and directors of The First National Bank of Stamford, and that any knowledge of the said Colvert in the transaction would not be imputed to The First National Bank of Stamford, and therefore the plaintiff should recover in this case," etc.

Judgment was accordingly rendered for the Stamford bank for the amount of the deposit, including the 2 per cent. interest, from which judgment the Breckenridge bank has appealed.

■ We have reached the conclusion that judgment should have been given for the Breckenridge bank. The Breckenridge bank contends, in effect, that the facts show a bank transaction in which Colvert being the sole representative of the bank, his knowledge is to be imputed to the bank, even though he may have had an individual interest in the matter adverse to the bank. The Stamford bank contends that the facts disclose an individual transaction of Colvert with the Breckenridge bank, from which it seems to be assumed that it can take the benefits of the transaction free of the agreements between Colvert and the Breckenridge bank, which he was without authority to make, and of which it had no knowledge. It is further the latter's contention that the special agreements between Colvert and the Breckenridge bank were illegal, ultra vires, and void. As we see it, it is unnecessary for us to determine whether the transaction was valid or void. It is likewise unnecessary to determine whether the facts show a bank transaction or an individual transaction. If the transaction was void as being contrary to law or public policy, then the law will leave the parties

where they have placed themselves, and the Stamford bank cannot, for that reason, recover the balance of the deposit. 10 Tex. Jur. p. 190. From the standpoint of the Stamford bank it was never a party to the transaction and certainly could derive no benefit from an illegal and void contract, even if made in its behalf. If the transaction is to be construed as a valid bank transaction, it necessarily comprehends a valid contract between the two banks. By virtue of such contract, if it existed, there was created between the banks the relation of debtor and creditor; such being the relation between a bank and its depositor. Clearly there was no such contract unless it was the agreement between Colvert and the Breckenridge bank. By that agreement the right of the Stamford bank to the deposit or any part thereof was at all times subject to the superior right of the Breckenridge bank to apply the deposit in discharge of Colvert's note. This condition put the Stamford bank to an election to either claim nothing by the transaction or else take subject to the terms of the agreement. Goldstein v. Union Nat. Bank, 109 Tex. 555, 213 S. W. 584.

█ If the transaction was the individual transaction of Colvert with the Breckenridge bank, the result is no different. If such was the case the principle is controlling which applies to one for whose benefit a contract is made by other parties. That rule is: "The beneficiary * * * can acquire no better right to enforce the contract than that held by the contracting parties themselves. He must accept the contract as it was made and must succeed or fail upon its provisions." 10 Tex. Jur., Contracts, §§ 109, 116. Suppose it was unquestionably an individual transaction, and the deposit had been credited to Colvert. And further suppose that upon exhibiting the deposit slip the Stamford bank had done just as it did, namely, credited the account of Colvert with the amount, and charged same to the Breckenridge bank. Could it be plausibly contended that, short of any showing of a fraudulent conspiracy or collusion, the Breckenridge bank would have lost the benefits of its agreement giving it the right to charge the note to the deposit at any time it saw fit to do so? No good reason occurs to us for so holding. If the deposit was the individual deposit of Colvert, then what is the basis of the Stamford bank's claim to it? What gives rise to the relation of debtor and creditor between the two banks such as must exist if the Stamford bank is entitled to recover the balance of the deposit? The only basis disclosed by the record, other than the agreement made between Colvert and the Breckenridge bank, is the simple act of the Stamford bank in crediting $15,000 to the account of Colvert and charging the amount thereof to the Breckenridge bank.

The Breckenridge bank had nothing to do with this transaction. It was in direct violation of the agreement between Colvert and the Breckenridge bank. The situation is no different, as we see it, than if Colvert had falsely stated that he had $15,000 on general deposit in the Breckenridge bank, and upon the faith of that statement the Stamford bank had passed to his credit a like amount and had permitted him to draw it out without first confirming the representation.

We are therefore of opinion that the judgment of the trial court should be reversed and judgment here rendered for the Breckenridge bank, which is accordingly so ordered.