**MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant,**

v.

**DADDY$ MONEY, INC., Appellee.**

**No. 21105.**

Court of Appeals of Texas, Dallas.

Dec. 17, 1982.

Rehearing Denied Jan. 31, 1983.

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellant.

Bertran T. Bader, III, Bader & Cox, Dallas, for appellee.

Before STEPHENS, SPARLING and VANCE, JJ.

STEPHENS, Justice.

This dispute arises over the sum of death benefits due under two identically worded life insurance policies. After the death of the insured, the carrier, appellant Mutual Life Insurance Company of New York (MONY), tendered payment of $7,989.30 to the beneficiary, appellee Daddy$ Money, Inc., contending that prior to the death of the insured, premium payments had been discontinued and that, under the terms of the policies, coverage had been reduced to single-premium paid-up participating life insurance. Daddy$ Money concedes that premium payments had been discontinued prior to the death of the insured, but contends that the coverage afforded by the terms of the policies was extended term life insurance for the full face amount of the policies, in the sum of $205,000.

When the policies were originally issued, they each contained a printed provision providing that in the event of default in premium payments, the policies would continue as paid-up extended term insurance so long as the cash value remains sufficient to pay the premium for the extended term insurance. In addition, each policy contained a typed endorsement, number 72500, which provided that in the event of a default in premium payments while the policies had a cash value, such cash value would be applied to provide a reduced single-premium paid-up participating life policy. The printed policies had been approved by the State Board of Insurance for use in Texas. The conflicting endorsement, form number 72500, had not been approved.

The facts are undisputed. The insured died, after discontinuance of premium payments, within the applicable time period when the face amount of the policies would have been due the beneficiary under the terms of the printed policy if endorsement number 72500 was ineffective. The trial court rendered a summary judgment for Daddy$ Money, holding endorsement 72500 ineffective, and awarded the beneficiary the face amount of the policies less outstanding loans against the policies, or $191,271.95, plus interest, together with reasonable attorneys' fees in the sum of $80,000.00 and statutory penalties. We affirm.

MONY's first point of error contends that endorsement 72500 is an enforceable provision of the policies irrespective of whether it had been approved or disapproved by the State Board of Insurance prior to its issuance. The trial court's judgment was predicated on the theory that the failure of the Board to approve a provision of a life insurance policy before its issuance renders ineffective any portion of the policy detrimental to the insured. Endorsement 72500, which provides for reduced single-premium paid-up participating life insurance for less than $8,000.00 upon a default in the payment of premiums, is clearly inconsistent with the printed provision, which provides a non-participating extended term policy for the face amount under those same circumstances. In a case involving a fire insurance policy, the Supreme Court has clearly stated that, where the provisions in a policy are inconsistent, the authorized provision must override the provision which was neither authorized nor approved. *Commercial Union Assur. Co., Limited v. Preston,* 115 Tex. 351, 282 S.W. 563 (1926).

MONY urges that life insurance policy provisions should be treated differently from fire insurance policy provisions for two reasons: (1) the Texas Insurance Code does not empower the Board to prescribe standard forms of life insurance policies or their endorsements, but only empowers the Board to disapprove life insurance policies or their endorsements for certain specific reasons, whereas the Code does empower the Board to prescribe uniform fire insurance policies and to require the insurance companies to adopt and use those forms and no others; and (2) that the intention of the legislature, by enacting statutory penalties against companies who fail to secure approval of their policies or endorsements, rather than declaring the unapproved policies or their endorsement void, was that unapproved policies or endorsements should be enforced between the company and its insured. Although MONY advances authority for its position from other jurisdictions, we are persuaded that precedent in Texas is otherwise. In *Lyons v. Texorado Oil & Gas Co.,* 91 S.W.2d 375 (Tex.Civ.App.

—Amarillo, 1935, writ ref'd), a distinction was drawn between regulatory statutes enacted for the purpose of providing revenue to the State, and those which were intended to protect the public. The rule was enunciated that where a statute was enacted for purposes of providing revenue for the state, and the statute provided penalties for failure to comply with its terms, yet did not declare void contracts entered into in violation of its terms, then such fines or penalties could be assessed, but the contract should not be held void. On the other hand, where the purpose of a statute was for police protection or protection of the public in general, then contracts entered into in violation of its terms are void although the statute provided only that penalties could be assessed.

▮▮▮ The business of insurance is of public concern and subject to strict regulation and control by the State. *Hamaker v. American States Insurance Company of Texas,* 493 S.W.2d 893 (Tex.Civ.App.— Houston [1st Dist.] 1973, writ ref'd n.r.e.); *Scanlan v. Home Ins. Co.,* 79 S.W.2d 186 (Tex.Civ.App.—Beaumont, 1935, writ ref'd); *See also, Castillo v. Canales,* 141 Tex. 479, 174 S.W.2d 251, (1943); *Daniel v. Tyrrell & Garth Inv. Co.,* 127 Tex. 213, 93 S.W.2d 372 (1936). Furthermore, statutes relating to insurance and insurance policy provisions should be liberally construed in favor of the insured and the public. *Johnson v. Prudential Insurance Company of America,* 519 S.W.2d 111 (Tex.1975). We conclude that the rationale enunciated in *Lyons v. Texorado Oil & Gas Co., supra,* is the better policy and we hold that the issuance of an unapproved endorsement to a life insurance policy, in violation of Article 3.42 of the Insurance Code, constitutes a nullity when enforcement of its terms is sought against the insured. MONY's point of error number one is overruled.

MONY next argues that endorsement 72500 was approved by the Board. The record reflects that by letter dated January 17, 1972, MONY filed endorsement 72500 with the Board for its approval. On January 25, 1972, the Board informed MONY

that the endorsement could not be approved as a "severable" endorsement, but could only be considered along with the policy to which it would be attached. On February 15, 1972, MONY responded with the following letter to the Board:

February 15, 1972

Mr. Albert W. Pogue, Supervisor
Headquarters Section Life Division
State Board of Insurance
1110 San Jacinto
Austin, Texas 78701

Re: Endorsements 72500 and 72501

Dear Mr. Pogue:

Thank you for your letter of January 21, 1972.

I am sorry that we inadvertently overlooked the section of your Board Order 2422 regarding severable forms. Accordingly, we are refiling the above severable endorsements, 72500 and 72501, along with copies of the respective policies with which they will be used. These are our Whole Life Policy (form 1–68) and Retirement Endowment Policy (form 6–68) stamped with the letter "T" following the numerical policy designation on the first and last pages to indicate the inclusion of either endorsement 72500 (in the Whole Life) or 72501 (in the Retirement Endowment). Forms 1–68 and 6–68 were approved by you on September 27, 1967 and November 24, 1967, respectively.

I should mention that when 1–68 was originally filed in Texas it included endorsement 68501, which makes the reduced paid-up insurance option effective on lapse rather than the extended term insurance option, in the situations covered by Section 8 of Board Order 957. This endorsement is not necessary when 72500 is placed in the policy, of course, since 72500 eliminates the extended term insurance option entirely. Therefore, policy 1–68T differs from 1–68 in two ways—by the *inclusion* of 72500 and the *exclusion* of 68501.

As indicated in our filing letter, endorsements 72500 and 72501 will be used with certain Federal tax-deferred retirement plans whenever it is required that reduced paid-up insurance be the auotmatic (sic) option on lapse. Currently this would involve only our Whole Life and Retirement Endowment policies as noted above. However, we may have occasion to use the endorsements in other policies if an Insured requests the reduced paid-up option to be the automatic option on lapse. You have our assurance that if this is done the form number of the policy involved will also be appropriately modified by the letter "T".

■ After receipt of MONY's letter, the Board still required additional and supplemental information before its approval of forms 1–68 and 6–68, and their accompanying endorsements 72500 and 72501. Finally, after the additional and supplemental information was furnished, the Board returned MONY's letter of February 15, 1972 bearing a rubber stamp which read:

APPROVED BY

Order No. 36575

March 24, 1972

Commission of Insurance

State of Texas

By reason of this rubber stamp affixed to MONY's letter, MONY now contends the Board approved endorsement 72500 in its severable form, for its use with future policies as was suggested in the final paragraph of MONY's letter of February 15, 1972. We cannot agree with MONY's contention. We hold that the approval evidenced by the rubber stamp affixed to MONY's letter of February 15, 1972, was approval only of its forms 1–68 and 6–68, together with endorsements number 72500 and 72501, and was not intended as approval of endorsement 72500 in its severable form, to be used as an endorsement to other policies at the will of MONY, and contrary to the clear instructions of the Board that endorsement 72500 could only be considered for approval when attached to and accompanying the policy with which it was to be used. MONY's point of error number two is overruled.

MONY next contends that endorsement number 72500 supersedes and controls the conflicting terms of the printed provisions of the policy. We agree that the law is clear that an endorsement to a policy generally supersedes and controls conflicting printed terms within the policy. However, endorsement number 72500, having never been approved by the State Board of Insurance, was a nullity insofar as its enforcement against the insured, as we held in point of error number one. Thus, the printed provisions of the policies control. MONY's point of error number three is overruled.

Next, MONY contends that subsequent premium finance agreements between Key Resources, Inc., and Daddy$ Money constitute a binding election to have the cash surrender values of the policies apply to purchase reduced paid-up participating life insurance. We recognize that MONY was a proper third party creditor beneficiary to the premium finance agreements and had competent summary judgment evidence been offered that the premium financing agreements were in force and effect at the time of the insured's death, the provision as to reduced paid-up participating life insurance would have been enforceable by MONY. However, there is no such summary judgment evidence. To the contrary, the summary judgment evidence shows that the premium finance notes had been released and were no longer in force and effect. Since the premium notes had been released, Key Resources, Inc., the payee of the note, had no rights against the insured and consequently, MONY as third party beneficiary could have no greater rights than the payee. *First Nat. Bank of Breckenridge v. First Nat. Bank of Stamford,* 53 S.W.2d 75 (Tex. Civ.App.—Eastland 1932, writ dism'd).

Finally, MONY contends that the trial court's award of attorney fees was grossly excessive. The parties submitted the question of reasonable attorneys' fees to the trial judge for his determination under Art. 3.62 of the Texas Insurance Code, along with a stipulation of evidence as to reasona-

ble attorneys' fees. The stipulation showed a total of 150 hours spent by Daddy$ Money's attorneys, and that a reasonable hourly rate would range from $110 to $150. It was further stipulated that two attorneys, other than Daddy$ Money's attorneys, would testify that one of the attorneys would consider the fact that Daddy$ Money was in bankruptcy; that both of the attorneys would require, in addition to an hourly rate, a contingency factor based on the results and that after considering all of those circumstances, in their opinion, a fee of $80,000, including $12,000 in the event of an appeal to the Court of Appeals, and $8,000 in the event of an appeal to the Supreme Court would be reasonable.

It becomes readily apparent from the stipulation and the fact that Daddy$ Money was in bankruptcy, that a sizeable portion of the $80,000 award was based on some contingency factor. A contingent fee contract is impermissible in an award of attorneys' fees under Art. 3.62 of the Texas Insurance Code. *Group Life and Health Insurance Co. v. Turner,* 620 S.W.2d 670 (Tex.Civ.App.—Dallas 1981, no writ); *Prudential Insurance Co., of America v. Uribe,* 595 S.W.2d 554 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.). MONY's fifth point of error is sustained.

The judgment of the trial court is affirmed, except as to the attorneys' fee award, which is hereby severed and remanded to the trial court for further proceedings to determine a reasonable attorneys' fee under Art. 3.62 of the Texas Insurance Code.