CHEROKEE WATER COMPANY,
Petitioner,

v.

Martha Paul Rogers FORDERHAUSE, et
al., Respondents.

No. C–854.

Supreme Court of Texas.

July 21, 1982.

Rehearing Denied Oct. 20, 1982.

McGinnis, Lochridge & Kilgore, Lloyd Lochridge and John W. Stayton, Austin, Gordon Wellborn, Henderson, Allison I. McLemore, Longview, for petitioner.

Ruff P. Wall, Carthage, T.A. Bath, Henderson, Bath, Turner, Barber & Shumate, for respondents.

GREENHILL, Chief Justice.

This case involves the construction of a deed. The deed conveyed the surface of the subject property, but the grantors reserved the mineral estate. The deed gave the grantee, Cherokee, a preferential right to acquire the minerals if the grantor decided to sell the minerals. The grantor executed an oil and gas lease to a third party. The main question is whether the oil and gas lease constituted a sale so as to give Cherokee a preferential right to acquire the minerals.

Cherokee Water Company [Cherokee], as holders of the preferential right to purchase, brought suit against Martha Paul Rogers Forderhause and others [mineral owners] for declaratory judgment and specific performance of the preferential right to purchase. The mineral owners brought a counterclaim for reformation of the deed. Both Cherokee and the mineral owners moved for summary judgment.

The trial court granted Cherokee's motion for summary judgment. It severed the mineral owners' claim for reformation of the deed. The trial court found that Cherokee was the holder of a preferential right to purchase under the deed, that an oil and gas lease executed by the mineral owners constituted an attempted sale of the oil, gas and other minerals under the terms of the preferential right to purchase, and ordered specific performance.

The Court of Appeals reversed. 623 S.W.2d 435. It found that the challenged language in the deed was ambiguous. It remanded the cause to the trial court to determine the intention of the parties. The court reasoned that even though technically an oil and gas lease was a sale of the minerals under Texas law, it was not clear from the language in the instrument that the parties intended a "lease" to be a "sale." The court noted, without citing authority, that it was "common knowledge in the area of real estate transactions and in the oil and gas business in particular, that the terms *sale of the minerals* and *lease of the minerals* have vastly different and entirely distinct meanings . . . ." [emphasis in original] The term "sale" as used in the instrument was considered by the court to be subject to two reasonable interpretations. The Court of Appeals felt it was necessary for the trial court to resolve the ambiguity by determining the intention of the parties.

The Court of Appeals also held that the trial court committed error in severing the mineral owners' plea for reformation from the declaratory judgment action. The majority considered the claim for reformation to be a compulsory counterclaim that must be tried with the rest of the cause under Rule 97(a) of the Texas Rules of Civil Procedure.

One justice dissented. He noted that the law in Texas is that an oil, gas and mineral lease is a *sale* of an interest in land. The dissenting justice was also of the opinion that severing of the claim for reformation was within the discretionary power of the trial court, and that court did not abuse its discretion considering the facts and circumstances surrounding the severance.

We disagree with the holding of the Court of Appeals. The language in the deed is not ambiguous, and an oil and gas lease is within the scope of the transactions contemplated by the preferential right to purchase. In addition, the trial court did not abuse its discretion by severing the counterclaim for reformation from the declaratory judgment action. The Court of Appeals is therefore reversed, and the judgment of the trial court is affirmed.

Cherokee purchased the surface of a 59.71 acre tract of land in Rusk County, Texas, from the fee owners of the tract, our Respondents, in 1947. Cherokee intended to construct a lake which would cover the surface of the property. The grantors reserved all the oil, gas and other minerals under the surface, but gave Cherokee and its assigns a preferential right to purchase the mineral estate should the mineral owners ever desire and agree to sell it. The preferential right to purchase provided:

In reference to the reservation of oil, gas and other minerals, it is expressly understood and agreed that the above land is purchased by Grantee for the purpose of forming a Lake and that all or a part of said land will be covered with water that will vary from a few to many feet in depth. This right of Grantee to cover said land with water is superior to the rights of Grantor to use said land to remove said minerals as above set out and the *mineral owners* shall not, in any manner, subject the Grantee to damages, liabilities or obligations of any kind or character by reason of the construction of said dam and covering said land with water. The rights of Grantor to said minerals shall be the same as if such minerals were conveyed to Grantor after said Lake is created and established. If a well or wells are drilled to remove said minerals, such well or wells shall be so operated and maintained as to not to in any manner pollute the Lake water with salt water, hydrocarbons or other foreign matter. If a dike or road is built from the shoreline to such well or wells, the same shall be so located as not to interfere with the use of said Lake by Grantee, his successors or assigns, and such dike or road shall not be constructed across said Lake so as to obstruct free and continuous passage of boats going to and from one part of the Lake to another part of such Lake. No act shall be performed by the *mineral owner* or his successors and assigns that is not necessary in order to remove said minerals.

Grantee is hereby given the first option *to purchase the oil, gas and other miner-* *als* herein reserved, at the same price and on the same terms *as Grantor has agreed to sell* to a third party; such option to be accepted or rejected within five (5) days after Grantee has been furnished with the bona fide offer made by such third party. *Failure to exercise such option on one sale, shall not be a waiver to purchasing at any subsequent sale or sales* by Grantor. [Emphasis added.]

As explained more fully in the Court of Appeals opinion, the mineral owners executed a number of oil and gas leases in the thirty years following the Cherokee conveyance, and eventually production was obtained. Cherokee did not attempt to exercise the preferential right to purchase until February 24, 1978. At that time the property was subject to an oil and gas lease executed by the mineral owners in 1976 with a Messrs. Boase and Wood as lessees, a lease Cherokee knew nothing about. When Cherokee discovered the existence of the Boase and Woods lease, Cherokee's attorney tried to contact the mineral owners, Boase, Woods and others to discover the terms and conditions of the lease. This effort proved unsuccessful, and it became necessary for Cherokee to bring the declaratory judgment action. There is no indication that the lessees, Boase and Woods, have expended money on the "lease." As noted above, the deed in question states that failure of Cherokee to exercise their right, assuming that they knew of the other lease, would not constitute a waiver.

The task before us is to determine whether the preferential right to purchase as set out in the deed includes an oil and gas *lease* as a "sale" of the mineral estate. In construing this contractual provision in the deed, we are seeking to ascertain the intent of the parties to the instrument. *Garrett v. Dils, Co.,* 157 Tex. 92, 299 S.W.2d 904 (1957). In the absence of fraud or mistake, writing alone will be deemed to express the intention of the parties, and courts will enforce an unambiguous instrument as written. *Sun Oil Co. v. Madeley,* 626 S.W.2d 726 (Tex.1981); *Rutherford v. Randal,* 593 S.W.2d 949 (Tex.1980); *City of*

*Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515 (Tex.1968). The court is not looking for the subjective intent of the parties, which, as here, is conflicting and in fact creates an ambiguity in the language of the instrument; instead, it is the objective intent, the intent expressed or apparent in the writing which is sought. *City of Pinehurst v. Spooner Addition Water Co., Id.* at 518.

■ Absent reformation or other matters not relevant here, there is no need to go beyond the language of the contractual provision in the deed to determine the intention of the parties. The term "sale," when used in a property context, is commonly understood to mean any conveyance of an estate for money or money's worth. Used alone, "sale" does not qualify the duration or quantity of the property interest conveyed, and a purchase of a fee simple, determinable fee, fee subject to a condition subsequent, or life estate would each be considered a "sale" of those interests.

■ The term "lease," when used in an oil and gas context, is a misnomer. The estate created by the oil and gas lease is not the same as those interests created under a "lease" governed by the law of landlord and tenant.

■ The common oil and gas lease creates a determinable fee. It vests the lessee with title to oil and gas in place. *W.T. Waggoner Estate v. Sigler Oil Co.,* 118 Tex. 509, 19 S.W.2d 27 (1929) and authorities cited therein. It logically follows, and has long been held by this court, that an oil and gas lease is a sale of an interest in land. *Avis v. First National Bank of Wichita Falls,* 141 Tex. 489, 174 S.W.2d 255 (1943); *Short v. W.T. Carter & Brother,* 133 Tex. 202, 126 S.W.2d 953 (1938).

The language of the Cherokee deed provides not only that Cherokee may exercise its right to purchase in any sale of the mineral estate, but on any *sale or sales* of that estate. Multiple sales of the mineral estate by the original grantor, either as a portion of the whole mineral estate (i.e., partial undivided interests or segregated acreage parcels) or repeated sales of the entire mineral estate are covered by use of the terms "sale or sales." The determinable fee created by an oil and gas lease will revert to the grantor upon the failure of the lessee to obtain production during the primary term, or failure to timely pay delay rentals. "Leases" generally provide that they will remain in force after the primary term as long as oil or gas is produced in paying quantities. If the mineral estate reverts to the grantor, it will be subject to the multiple sales provision of the preferential right to purchase.

■ The Court of Appeals noted in its opinion that several leases were executed on the tract during the thirty years subsequent to the 1947 deed, that gas was actually produced sometime during this period, that Cherokee and the mineral owners shared the royalties from this production, and that neither party ever indicated that the preferential right to purchase was triggered by any of the subsequent leases. Consideration by the Court of Appeals of the extrinsic evidence of this subsequent conduct was improper, as the terms sought to be explained are unambiguous. *Sun Oil Co. v. Madeley,* 626 S.W.2d 726 (Tex.1981). This evidence does not so much explain the terms of the deed as it does create an ambiguity; as such, consideration by the court was improper. In addition, Cherokee's activities (or non-activity) are covered expressly by language in the deed that the failure of Cherokee to exercise its right of first refusal was not a waiver of subsequent exercises of that right.

■ The trial court did not commit error by severing the mineral owners' claim for reformation from Cherokee's declaratory judgment action. Rule 41, Texas Rules of Civil Procedure, provides that "any claim against a party may be severed and proceeded with separately." A claim may be properly severed if it is part of a controversy which involves more than one cause of action, and the trial judge is given broad discretion in the manner of severance and consolidation of causes. *McGuire v. Commercial Union Ins. Co. of N.Y.,* 431 S.W.2d 347 (Tex.1968).

Under these facts, we cannot find that abuse of discretion. The reformation claim was severed *after* summary judgment was granted for Cherokee, apparently in an effort to expedite appellate review of the declaratory judgment action. While it may have been preferable to try the reformation issue before an appeal would normally lie, we cannot say that any abuse of discretion occurred.

The mineral owners contend that the preferential right to purchase contained in the deed violates the rule against perpetuities. The point is overruled. We agree with the reasoning of the Court of Appeals on this issue.

The judgment of the Court of Appeals is therefore reversed, and the judgment of the trial court is affirmed. It may proceed with the severed matter, the action for reformation.