**CARRABBA, et al., Appellants,**

v.

**EMPLOYERS CASUALTY COMPANY, et al., Appellees.**

**No. C14–86–306–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 15, 1987.

Rehearing Denied Nov. 12, 1987.

Byron Lee, Houston, for appellants.

Jerry P. Campbell, Beverly Willis Bracken, Waco, Robert D. Green, Susan E. Crowley, Houston, Edwin E. Wright, III, Dallas, for appellees.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

This appeal concerns a suit for declaratory judgment regarding priority of insurance liability. In March 1981, a tractor-trailer collided with a vehicle driven by Dr. Robert A. Winkelmann. Dr. Winkelmann died as a result of the accident. His widow filed suit for wrongful death against John Ben Carrabba, individually, and John Ben Carrabba, Inc., d/b/a Carrabba Oil Company (employer of the driver) and against Gooseneck Trailer Manufacturing Co., Inc. (the owner of the tractor). The defendants in the *Winkelmann* cause brought the present suit against various insurance carriers for declaration of the priority of insurance coverage. We affirm the judgment of the trial court.

The controlling issue of this appeal, as in the court below, is the priority of two insurance policies.

Members of the Carrabba family are officers of both Gooseneck Trailer Manufacturing Co., Inc., and Carrabba Oil Company. At the time of the accident, Gooseneck was covered by a comprehensive automobile liability policy issued by Employers Casualty Company with limits of $250,000 per person and $500,000 per occurrence. Additionally, Gooseneck carried a $1,000,000 umbrella policy, requiring underlying insurance of $500,000 per person and $500,000 per occurrence. Gooseneck's umbrella policy was issued by Mission Insurance Company and its managing agent Sayre & Toso. John Ben Carrabba and Carrabba Oil were insured by Gulf Insurance Company under a comprehensive automobile policy including non-owned and hired automobile coverage with a combined single limit of $500,000. The trailer, owned by yet another individual, Tommy Parker, was insured by Compass Insurance Company and Armco

Insurance Group under a comprehensive automobile policy with $250,000 limits.

Despite oral and written demand by Carrabba Oil, the insurance companies refused to state what coverage would be afforded under the various policies. Carrabba Oil and Gooseneck ("the Carrabbas") then filed a declaratory judgment action against each of the insurance companies and the Sayre & Toso agency seeking a declaration of coverage. Compass and Armco denied any coverage, relying upon an exception in the policy. The remaining insurance companies, Employers, Mission, and Gulf, participated in negotiating a settlement of the *Winkelmann* suit for $1,250,000.

The contribution to this settlement was as follows:

| | |
|---|---|
| Employers | $  250,000 |
| Gulf | 300,000 |
| Carrabbas | 100,000 |
| Mission | 600,000 |
| Total | $1,250,000 |

The settlement was remarkable in that although the combined insurance coverage was in excess of the settlement, an insured was required to contribute. A potential gap existed in the insurance scheme. Since only one person was injured in the accident, Employers refused to pay more than $250,000, its per person limit of liability, not $500,000, its policy limit per occurrence. Mission insisted that liability under its policy did not attach until the underlying insurer or the insured had paid the underlying limit of $500,000 specified in the policy. It refused to participate in the settlement until $250,000 in addition to Employers' $250,000 had been contributed. Gulf alleged that its policy was excess over Mission's by virtue of the policy provision that "[the non-owned vehicle] endorsement shall be excess over any other valid and collectible insurance available to the insured."

Following the settlement, the Carrabbas moved for partial summary judgment against Gulf, alleging that the Gulf policy was a primary policy, and therefore, Gulf's policy limit of $500,000 should be added to the $250,000 contributed by Employers before Mission contributed. Employers, Mis-

sion, and Sayre & Toso joined the motion. Summary judgment was granted on the priority issue only; the trial court ordered liability to be assessed against Employers first, Gulf second, and Mission third.

Early in the litigation, Gulf filed a cross-action against the other defendants to the declaratory judgment, reasserting its claim to be an excess insurer only and alleging that if a $250,000 gap existed between the Employers and Mission policies, the gap was due to the negligence of Employers, Mission, and Sayre & Toso in failing to coordinate the coverage. Mission and Sayre & Toso also filed cross-claims against Employers, alleging negligence, and against Gulf and Employers, asserting Mission had no liability under its umbrella policy until all other insurance was exhausted. Both Gulf and Employers filed third party claims against Compass and Armco to recover settlement costs.

Employers specially excepted to the claims of Gulf, Mission, and Sayre & Toso, arguing that claims of negligence could not be asserted in a declaratory judgment action, that the defendant insurance companies had no standing to assert a negligence cause of action, and that Employers had no duty to the other insurance companies. The special exception was granted, and the allegations in the cross-actions asserted against Employers by Gulf, Mission, and Sayre & Toso were stricken.

After the grant of partial summary judgment, Gulf reimbursed the settlement funds contributed by the Carrabbas; the Carrabbas non-suited Gulf, assigned to Gulf all their causes of action, and realigned themselves with Gulf against Employers, Mission, Sayre & Toso, Compass, and Armco. The Carrabbas then amended their original petition, expanding the suit for declaratory judgment to include claims of negligence, gross negligence, and violations of the Texas Insurance Code. The Carrabbas prayed for damages and punitive damages against both Employers and Compass.

After the original action had been expanded to include negligence claims, Gulf, Mission, and Sayre & Toso, whose pleadings had been struck by the grant of Employers' special exceptions, filed amended petitions, again asserting claims of negligence against Employers and asserting a right of equitable and contractual subrogation to the rights of the Carrabbas. Employers specially excepted to the amended petition of Mission and Sayre & Toso, complaining that the cross-plaintiffs had failed to state a cause of action against Employers. The order granting the second special exception struck the claims of Mission and Sayre & Toso against Employers and specifically stated that "the order or priority of the applicable insurance policies, previously determined by this Court, has finally adjudicated *all* issues in the case between Mission Insurance Company and Sayre & Toso, Inc., Gulf Insurance Company, Employers Casualty Insurance Company, [the Carrabbas], and Melvin Conn." (Emphasis added.)

On January 30, 1986, an order of severance was filed and granted, removing the third party claims pending against Compass and Armco to a separate cause. Although no motions other than that seeking severance were pending before the trial court on January 30th, the court also signed an order entitled "Final Judgment." This order had the following effect on the claims before the trial court: (1) it reaffirmed the grant of partial summary judgment against Gulf; (2) it reiterated the priority of liability of the insurance policies, making no changes in the priority sequence; (3) it dismissed all claims brought by Gulf, Mission, and Sayre & Toso against Employers; and (4) it dismissed all other relief sought by any party *except any action brought against third party defendants Compass & Armco.*

█ Preliminary to addressing appellants' points of error, this court gave serious consideration to the challenge to our jurisdiction raised by appellee Employers. Employers contends that the claims of the Carrabbas against Compass and Armco remain pending in the trial court and the judgment is, therefore, not a final, appealable judgment. An appeal may be prosecuted from a *final* judgment only. Tex.

Civ.Prac. & Rem.Code § 51.012 (Vernon 1986). A final judgment fully disposes of all parties and all issues. *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex.1985). If there were claims yet pending in the court below, this court would be without jurisdiction to consider the points of error raised by the appellant. We disagree, however, that any claim of the Carrabbas remained after the final judgment. In the Plaintiffs' Second Amended Petition, the Carrabbas state that they have assigned to Gulf their claims and causes of action against all defendants. Following the assignment of claims, Gulf asserted "third party" claims against Employers, Mission, Sayre & Toso, Compass and Armco. Since the rights of the Carrabbas and the rights of Gulf had been merged by the assignment of claims, the claims of the Carrabbas as well as those of Gulf were asserted in Gulf's third party action against Compass and Armco. Likewise, the Carrabbas' claims against Compass and Armco were removed from the original cause with the trial court's order severing all third party actions. Had they not been so severed, the claims would be among those dismissed by paragraph four of the trial court's final judgment which stated that "all other relief sought by any party except any action against Third Party Defendants, Compass Insurance Company and the Armco Insurance Group, are hereby dismissed"; Compass and Armco were not *third party* defendants as to the Carrabbas but for the assignment of plaintiffs' claims to Gulf. No party to this appeal contends that the claims of the Carrabbas against Compass and Armco were dismissed by the trial court. They survive in the third party action asserted by Gulf. We, therefore, hold that the judgment of the trial court is a final and appealable judgment. The present appeal is within the jurisdiction of this appellate court.

■ By its fifth point of error, appellants attack the trial court's order severing their claims against Compass and Armco, contending that the liability of Compass and Armco *must* be adjudicated at the time the priority of the other insurance carriers is established. Rule 41 of the Texas Rules of Civil Procedure provides that "[a]ny claim against a party may be severed and proceeded with separately." A claim may be properly severed if it is part of a controversy which involves more than one cause of action. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex.1982). The trial court is given broad discretion in determining when the severance of a cause is appropriate. *Id.* at 525. The case before us involves multiple parties asserting multiple causes of action. The allegations against Compass and Armco for negligence, gross negligence, and violations of the Texas Insurance Code are distinctly different issues from those addressed in the partial summary judgment, determining the priority of coverage among Employers, Gulf, and Mission. If the claims against Compass and Armco are proved to be true, severance will not prohibit the trial court from ordering actual and punitive damages, thereby requiring that Compass and Armco contribute to the settlement and reimburse the participating carriers. While it might have been preferable to try all the claims against Compass and Armco before appealing the issues resolved by the summary judgment, we do not find the order of severance to have been an abuse of discretion. Appellants' fifth point of error is overruled.

Appellants' remaining points of error, one through four, attack the grant of summary judgment, alleging that there are disputed fact issues with respect to both the priority of insurance and the other causes of action asserted against appellees. Appellants pray that this court will re-order the priority of the insurance or, alternatively, remand the case for a full trial on the merits.

The standards for review of summary judgment established by the Supreme Court of Texas are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favor-

able to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and resolved in its favor.

*Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985).

With respect to the priority of insurance, appellants contend that the Gulf policy should not contribute to the settlement until both the Employers and the Mission policies are exhausted. Appellants base their argument on the language of the insurance policies, the insurance scheme reflected by those policies, the premium payments, the intent of the insured, and the facts surrounding the purchase of the policies. Appellants contend this analysis was applied by this court in *Liberty Mutual v. United States Fire Insurance Co.,* 590 S.W.2d 783 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.).

The Employers' policy issued to Gooseneck, owner of the tractor, provided comprehensive automobile liability for $250,000 for the named insured and any other person using the tractor with the permission of Gooseneck.

The Mission policy was also issued to Gooseneck. On page one, the policy specifically states that it is an umbrella policy in the amount of $1,000,000. The automobile liability limitation endorsement required that "this policy shall not apply to any liability for personal injury . . . as defined herein, unless such liability is covered by valid and collectible underlying insurance as described in the schedule of underlying insurance. . . ." The schedule of underlying insurance listed Texas Employers Insurance Association as the carrier for automobile liability in the amounts of $500,000 per person and $500,000 per occurrence for bodily injury. The policy stated that liability under the policy "shall not attach unless and until the insured, or the insured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. . . ."

The Mission policy also contained the following relevant clauses:

III. LIMIT OF LIABILITY

The Company shall only be liable for the *ultimate net loss,* the excess of either

(a) The limits of the underlying insurances as set out in the attached schedule. . . .

or

(b) The amount as set out in [the self-insured retention]. . . .

L. OTHER INSURANCE

If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this policy, *other than insurance that is specifically stated to be excess of this policy,* the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. (Emphasis added.)

The Gulf policy was issued to John Ben Carrabba, Inc. d/b/a Carrabba Oil Company, employer of the tractor driver. It afforded coverage for comprehensive general liability, personal injury liability, and basic automobile liability. In addition to insuring owned automobiles, the policy included an endorsement for hired vehicles, subject to certain provisions, including the following:

3. EXCESS INSURANCE

*The insurance afforded by this endorsement shall be excess insurance over any other valid and collectible insurance available to the insured.* (Emphasis added.)

As provider of a comprehensive automobile policy covering the owner of the tractor, Employers does not dispute that the limits of its policy are primary and must be exhausted before any excess coverage policy becomes effective. *See North River Insurance Co. v. Gurney,* 603 S.W.2d 280 (Tex.Civ.App.—Beaumont 1980, no writ); *Canal Insurance Co. v. Gensco, Inc.,* 404 S.W.2d 908 (Tex.Civ.App.—San Antonio 1966, no writ). The central issue before this court is the priority of the other two insurance policies: (1) Gulf's primary policy with a non-owned vehicle endorsement limited by an excess clause; and (2) Mission's umbrella policy. Each insurance carrier

asserts that the language in the "other insurance" or "excess insurance" clause of its policy (emphasized above) makes its coverage excess to that of the other carrier.

The issue calls for the interpretation of the insurance contracts. The meaning to be given the language used in a contract is a question of law. *Vanguard Insurance Co. v. Stewart*, 593 S.W.2d 736, 739 (Tex. Civ.App.—Houston [1st Dist.] 1979), *aff'd* 603 S.W.2d 761 (Tex.1980). We will consider the intent of the parties only as that intent is reflected in the writings. Where there is no contention that the contract of insurance is ambiguous, no extrinsic evidence will be considered to vary or control the terms of an insurance policy or to explain what the terms meant to a particular seller or purchaser of insurance. *Id.* at 739.

Mission contends that the clear meaning of the limiting language in its policy with respect to other insurance is that its coverage will be excess with respect to all other valid and collectible insurance except for a policy that designates the Mission policy (presumably by number) as an underlying policy. Gulf contends that its policy meets the exception in Mission's "other insurance" clause because the policy specifically states that, with respect to hired automobiles, it will be excess to *any* other valid and collectible policy available to the insured. The word "any," Gulf reasons, includes the Mission policy. In support of its analysis, Gulf cites a decision by the Supreme Court of Idaho construing policies nearly parallel to those of Mission and Gulf: *Unigard Insurance Group v. Royal Globe Insurance Co.*, 100 Idaho 123, 594 P.2d 633 (1979). The Idaho court determined that the driver's excess insurance covering a non-owned vehicle was excess to the vehicle owner's comprehensive catastrophe liability policy.

This appeal is controlled, however, by our decision in *Liberty Mutual Insurance Co. v. U.S. Fire Insurance Co.*, 590 S.W.2d 783, 785 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). There, as here, we were to determine the priority of three insurance policies, written by three separate carriers, all of which were applicable to one injury accident. Taub, the owner of the vehicle, carried a family automobile policy and a "professional comprehensive personal catastrophe liability policy, commonly referred to as an umbrella policy," issued by U.S. Fire Insurance Company. Like the Mission policy before us, the U.S. Fire policy expressly limited liability to the "ultimate net loss in excess of the insured's retained limit." With respect to other insurance, the U.S. Fire policy provided that it would be excess to any other collectible insurance "except insurance purchased to apply in excess of the sum of the retained limit and the limit of liability hereunder." The driver of the borrowed automobile was insured by Liberty Mutual. Although providing primary coverage for bodily injuries, the Liberty Mutual policy contained the same limitation with respect to non-owned automobiles as did the Gulf policy: the coverage would be excess over *any* other valid and collectible insurance.

Where provisions of applicable insurance policies appear to conflict, this court has resolved the antagonism by examining the overall pattern of insurance and construing the policy as a whole. *Liberty Mutual*, 590 S.W.2d at 785. Applying the analysis employed in *Liberty Mutual*, we note that the Gulf policy generally afforded primary coverage; its coverage was excess only because its insured was operating a hired vehicle. In contrast, the Mission policy was not of the same level or character. Under no circumstance was the Mission policy a primary policy; it was to be an umbrella in *all* events, covering only the insured's "ultimate net loss" after all other valid and collectible insurance had been exhausted.

There are acknowledged differences between an umbrella policy and primary policy containing an excess clause. The coverage of the umbrella, or "catastrophe" policy, is unique. The umbrella policy is generally recognized as having been designed to pick up where primary coverages end, providing extended protection in a time when verdicts can be exceedingly high. 8A *J. Appleman, Insurance Law*

*and Practice* § 4909.85 (1981). The courts recognize that the umbrella carrier is not a primary insurer that attempts to limit a portion of its risk by describing it as "excess," nor is the policy a device to escape responsibility. *Id.* Umbrella policies are therefore regarded as true excess over and above any type of primary coverage including excess provisions arising from primary policies. *Id. See Berkeley v. Firemen's Fund Insurance Co.,* 407 F.Supp. 960 (W.D.Wash.1975); *Allstate Insurance Co. v. Employers Liability Assurance Corp.,* 445 F.2d 1278 (5th Cir.1971); *Illinois Emcasco Insurance Co. v. Continental Casualty Co.,* 139 Ill.App.3d 130, 487 N.E.2d 110 (1 Dist.1985); *State Farm Fire & Casualty Co. v. LiMauro,* 65 N.Y.2d 369, 492 N.Y.S.2d 534, 482 N.E.2d 13 (1985).

■ In conformity with the majority rule as declared by other courts, the decision of this court in *Liberty Mutual,* and established practice in the insurance industry, we hold that where an umbrella policy provides coverage for a loss in excess of the underlying policies listed in its schedule and in excess of the applicable limits of any other underlying insurance collectible by the insured, all such other collectible insurance must be exhausted before liability attaches under the umbrella policy. The trial court did not err in requiring that the priority of insurance is first Employers, second Gulf, and finally Mission. Although no amounts are recited in the judgment, it is implicit in the order that each policy, identified by carrier and policy number, be exhausted before the next level of insurance is to be applied.

As an alternative to its position that its policy is excess over Mission's, appellant Gulf argues that it and Mission are both excess carriers and should share prorata in the secondary coverage. Our supreme court followed just such a prorata scheme in *Hardware Dealers Mutual Fire Insurance Co. v. Farmer's Insurance Exchange,* 444 S.W.2d 583 (Tex.1969). In that case the court found that two similar "other insurance" clauses were mutually repugnant. It resolved the dispute by holding

that inasmuch as the two policies provided for the same limits of liability they should share equally in the loss; liability was prorated between the carriers. *Id.* at 590. The case was distinguished in *Liberty Mutual* with the same reasoning we apply here: the policies involved in *Hardware Dealers* were both primary; here, as in *Liberty Mutual,* the contest is between a primary policy and an umbrella policy. The policies are not of the same character; they do not supply coverage at the same level. The "other insurance" clauses of a primary policy with an excess clause and an umbrella policy are not equivalent and are not mutually repugnant so that they cancel one another. Appellants' second point of error is overruled.

Our affirmation of the trial court's order of priority renders immaterial the fact issues urged by appellants in their first point of error. Our holding dictates that the primary policy issued by Gulf must be exhausted before the umbrella policy of Mission is obliged to pay. This priority is not dependent upon the existence or non-existence of any other primary policy. Hence, any issue as to the amount paid by Employers under its primary policy is immaterial to our holding. The alleged negligence of Employers in failing to provide $500,000 per person underlying insurance or the negligence of any parties in failing to coordinate the primary and umbrella coverage carried by Gooseneck through Mission is immaterial to Gulf or to the Carrabbas. Whether Employers provided no coverage, $250,000 coverage, or $500,000 coverage, Gulf is not injured by the "gap" because it would be obliged to contribute its limits of $500,000 to a $1,250,000 settlement before liability would attach under an umbrella policy. The Carrabbas, the other appellants, were not injured by the "gap" because they are fully protected by the determined priority of the policies and their contribution to the settlement has been refunded. Any additional expenses suffered by the Carrabbas as a result of the dispute among insurance carriers cannot be attributed to Employers or Mission, which contributed to the settlement the full measure required by the policies as construed by the

trial court and affirmed by this court. We note that only Mission was injured by the "gap." It was required to pay $250,000 more than it would have paid had Employers provided $500,000 per person coverage. Mission, however, does not appeal the dismissal of its negligence claims against Employers.

Appellants further argue that other fact issues raised by the affidavit of the casualty manager of Gulf preclude the grant of summary judgment. These disputed facts relate to circumstances surrounding the purchase of the policies and the intent of the parties in selecting the particular Gulf policy. As with any contract, absent a pleading of ambiguity, the courts will interpret the meaning and intent of an insurance policy from the four corners of the document without the aid of the extrinsic evidence. *Houston Lighting & Power Co. v. Tenn–Tex Alloy & Chemical Corp.*, 400 S.W.2d 296, 300 (Tex.1966); *Vanguard Insurance Co. v. Stewart*, 593 S.W.2d 736, 739 (Tex.Civ.App.—Houston [1st Dist.] 1979), *aff'd* 603 S.W.2d 761 (Tex.1980). Unambiguous provisions cannot be varied by parol evidence of surrounding circumstances or the parties' subjective intent. *Entzminger v. Provident Life & Accident Insurance Co.*, 652 S.W.2d 533, 537 (Tex.App.—Houston [1st Dist.] 1983, no writ). The only relevant evidence is the actual policy. Were our courts to give credence to testimony as to what priority the insurance agent *believed* that a particular policy would have and to vary the type of coverage accordingly, every situation in which more than one carrier was involved would be litigated. Appellants' first point of error is overruled.

In their third point of error, appellants contend that the trial court erred in granting summary judgment when no proper motion was before the court. The Carrabbas were the first to file a motion for summary judgment against Gulf. At the time the motion was granted, Employers and Mission had on file in the trial court pleadings in which they joined the Carrabbas' motion. However, between the time the interlocutory summary judgment was granted and the time it was made a final

judgment, the Carrabbas non-suited all claims against Gulf, including any claim for summary judgment. Appellants urge that the non-suit of Gulf eradicated the Carrabbas' summary judgment pleadings, leaving Employers' and Mission's motions for summary judgment unsupported by a statement of "the specific grounds therefor" as required by Rule 166–A of the Texas Rules of Civil Procedure. We disagree. Since the interlocutory judgment was granted prior to the dismissal of the Carrabbas' claims against Gulf, the adoption of the Carrabbas' motion was a sufficient statement by Employers and Mission of the grounds for summary judgment. The legal relationships of the parties with respect to the priority of coverage issue were fixed at the time of that grant. *Nixon v. Nixon*, 348 S.W.2d 434, 437 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.). Our review is limited to the status of the pleadings and summary judgment proof on file at the time of the granting of summary judgment; our conclusion is based upon the propriety of the grant at that time, not at the time the interlocutory order was made final by the severance of other issues. Appellants' argument is further discredited by the existence of an independent motion for summary judgment, sufficiently stating the grounds therefor, filed by Mission and joined by Employers before the motion for interlocutory summary judgment was granted. Appellants raised no objection in the trial court to the adequacy of those motions to support summary judgment. Any such objection has therefore been waived. Tex.R.Civ.P. 166–A(c); *State Board of Insurance v. Westland Film Industries*, 705 S.W.2d 695, 696 (Tex.1986). We overrule appellants' third point of error.

■ Finally, by point of error four, appellant Gulf complains it was denied its right to a jury trial on the issue of the negligence of Employers or Mission in allowing a gap in insurance coverage to exist and on the issues of attorney fees and other expenses. The immateriality of these issues has been previously addressed in this opinion. Immaterial issues cannot be

submitted to a jury. In the absence of controverted material issues, the grant of summary judgment does not deny the losing party its constitutional rights to a jury trial. *Wyche v. Works,* 373 S.W.2d 558, 561 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.).

The judgment of the trial court is affirmed.