U.S. FIRE INSURANCE
COMPANY, Appellant,

v.

AETNA CASUALTY & SURETY
COMPANY, Appellee.

No. 01–88–00811–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 9, 1989.

Wade B. Reese, Weitinger & Tucker, Houston, for appellant.

Barclay A. Manley and Kate H. Mai, Fulbright & Jaworski, Houston, for appellee.

Before EVANS, C.J., and DUGGAN and O'CONNOR, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a bench trial judgment determining which of two insurance policies must pay the excess portion of a judgment for damages against the two insurers' common insureds.

The driver of a vehicle involved in a collision causing bodily injury was insured by appellee, Aetna Casualty & Surety Company; the owner of the same vehicle was insured by Highlands Insurance Company for primary coverage, and by appellant, U.S. Fire Insurance Company, for excess coverage. Both the Aetna and the U.S. Fire policies contain "other insurance" clauses.

Brown & Root built a facility for ICI Americas, Inc., at the latter's plant near Bayport, Texas. Under its written construction contract, Brown & Root agreed to provide and maintain liability insurance covering all of its automobiles and trucks, with limits of $1,000,000 for each person and $1,000,000 for each occurrence for bodily injuries or death.

During the job, Charles Sylvester Wooldridge, a Brown & Root employee, was killed as a result of a collision at the plant on November 2, 1981, when his motor scooter collided with a pickup truck driven by Colin C. Stewart, an employee of ICI Americas, Inc. Brown & Root owned the pickup truck, and leased it to ICI Americas for Stewart's use.

Before this suit between insurers, Wooldridge's survivors sued Stewart and ICI Americas, alleging that Stewart's negligence proximately caused Wooldridge's death. The Wooldridge suit was settled for the total sum of $1,500,000.

Brown & Root and the pickup truck driven by Stewart were insured with: (1) primary coverage by Highlands Policy No. GA 82 2056, with limits of $250,000 per person and $500,000 per occurrence; and (2) excess coverage by appellant, U.S. Fire Policy No. 522-0287775, which applied after Highlands' primary coverage limits, up to a limit of $5,000,000 per occurrence. These policies also covered Stewart and ICI Americas as omnibus insureds. Additionally, ICI Americas and Stewart were also insured by appellee, Aetna Policy No. 04 AL 315949 SRA, with policy limits of $2,000,000.

Highlands provided the defense and first dollar coverage for Stewart and ICI Americas. Highlands' coverage and limits of

liability are not in issue, and it is not a party to this suit. In the settlement, Highlands paid the Wooldridge plaintiffs its policy limits of $250,000. U.S. Fire paid the remaining $1,250,000 and then sued Aetna to recover that amount.

The parties do not dispute the above facts, which are set forth in the trial court's findings of facts and conclusions of law.

U.S. Fire argued in the trial court that the terms of Aetna's primary policy required Aetna to pay the excess over Highland's $250,000 limits before U.S. Fire was called on to pay under its excess policy. The trial court's decision required interpretation of the following policy provisions:

1. U.S. Fire policy Condition K, entitled "Other Insurance":

If other valid and collectible insurance is available to the insured which covers a loss also covered by this policy, *other than insurance that is specifically purchased as being in excess of this policy*, this policy shall operate in excess of, and not contribute with, such other insurance. (Emphasis added).

2. U.S. Fire policy Endorsement No. 2: In consideration of the premium charged, it is agreed that this policy shall apply *regardless of the existence of other insurance that would apply on the same basis*. (Emphasis added).

It is further agreed that there shall be no reduction in the limits of liability, contributions by equal shares, or contributions by limits because of the existence of other insurance that would apply on the same basis.

3. Aetna policy Endorsement No. 37, entitled "Amendment of Other Insurance Condition":

It is agreed that if any other valid and collectible insurance applicable to any loss or expense covered by this policy is available to the insured, *the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance, except where such other insurance specifically applies as excess* over this insurance. (Emphasis added).

U.S. Fire argued that its policy was always intended to be umbrella excess coverage. Therefore, when Endorsement No. 2 refers to "other insurance" that would apply "on the same basis," that reference is always to true umbrella excess coverage, and not to a primary policy with an excess insurance clause. Thus, U.S. Fire argues, its policy is to be an umbrella policy over both the Highlands *and Aetna* policies, and Aetna, not U.S. Fire, was obligated to bear the cost of the Wooldridge settlement in excess of Highland's primary coverage.

Aetna contended that within U.S. Fire's policy, Endorsement No. 2 was the governing "other insurance" clause as between that policy's Condition K and Endorsement No. 2, and that the U.S. Fire policy was a special policy, not a general "umbrella" policy. Aetna further concluded that the phrase "on the same basis" in U.S. Fire's Endorsement No. 2 meant that the policy provided coverage regardless of the existence of other excess insurance, and that the Aetna policy's Endorsement No. 37 therefore applied on an excess basis only after payment of U.S. Fire's $5,000,000 policy excess limits.

After a bench trial, the court entered judgment that U.S. Fire take nothing against Aetna. In a single point of error, U.S. Fire urges that the trial court erred as a matter of law in holding that its Endorsement No. 2 amended and superseded its Condition K "Other Insurance" provision, thereby transforming the coverage it provided from umbrella excess to first dollar excess.

Two recent Texas cases, both from the Fourteenth Court of Appeals, address the issue of priority upon apparent conflict between "other insurance" clauses of applicable insurance policies. *Carrabba v. Employers Casualty Co.*, 742 S.W.2d 709 (Tex. App.—Houston [14th Dist.] 1987, no writ); *Liberty Mut. Ins. Co. v. U.S. Fire Ins. Co.*, 590 S.W.2d 783 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). Both parties have cited these cases in support of their respective positions.

In *Liberty Mutual*, a passenger in a vehicle driven by a non-owner was injured in a collision. She sued, and the parties settled. The vehicle owner's insurer tendered its policy limits. The non-owner driver's insurer, Liberty Mutual, and the owner's umbrella insurer, U.S. Fire, participated in the settlement, but agreed to seek a judicial determination of the order of coverages between them. The case was tried on stipulated facts, and the trial court entered a declaratory judgment favoring U.S. Fire. Liberty Mutual appealed, and the Fourteenth Court affirmed. 590 S.W.2d at 784.

Liberty Mutual's policy provided the driver primary coverage for bodily injuries, but additionally contained the following clause:

Other Insurance: If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.* (Emphasis added).

590 S.W.2d at 784.

The U.S. Fire policy contained the following provisions:

I. COVERAGE—

The company agrees to indemnify the insured for *ultimate net loss in excess of the retained limit* which the insured shall become legally obligated to pay: (a) Personal Liability. As damages because of personal injury or property damages;

. . . .

III. LIMIT OF LIABILITY—Retained Limit—

The company's liability shall be only for the *ultimate net loss in excess of the insured's retained limit* defined as the greater of:

(a) the total of the applicable limits of the underlying policies listed in Schedule A hereof, *and the applicable limits of any other underlying insurance collectible by the insured;* or

(b) an amount as stated in Item 4(B) of the Declarations as the result of any one occurrence not covered by the policies so listed or insurance;

and then up to an amount not exceeding the amount as stated in Item 4(A) of the Declarations as the result of any one occurrence.

. . . .

F. Other Insurance. *If other collectible insurance with any other insurer is available* to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the retained limit, and the limit of liability hereunder), *the insurance hereunder shall be in excess of, and not contribute with, such other insurance.* (Emphasis added).

590 S.W.2d at 784–85.

The Fourteenth Court acknowledged the apparent conflict between the "other insurance" clauses in the Liberty Mutual and U.S. Fire policies, but found that an examination of the purpose of the policies dictated the resolution. The court said the Liberty Mutual policy generally afforded primary coverage, which became excess coverage only in the presence of a non-owned vehicle. However, the court found, U.S. Fire's policy remained excess coverage in all events and all parties to the policies intended for U.S. Fire's policy to remain an "umbrella" policy, and for Liberty Mutual's coverage to underlie it. 590 S.W.2d at 785.

At this juncture, we compare the facts in our case to those in *Liberty Mutual*. Stewart, like the driver in *Liberty Mutual*, did not own the vehicle he was driving, but was insured by Aetna, just as Liberty Mutual insured the non-owner driver in that case. The vehicle driven by Stewart was insured by Highlands, which tendered its policy limits without dispute, as did the vehicle owner's insurer in *Liberty Mutual*. In both *Liberty Mutual* and our case, U.S. Fire provided additional insurance to the vehicle owner over and above the primary policy limits.

The "other insurance" clause in the Liberty Mutual policy provided, with respect to temporary substitute or non-owned cars, that its coverage was excess over any other valid and collectible insurance. The Aetna policy in our case contains a substantially similar clause in "VI. Additional Conditions" of the pre-printed terms of the Comprehensive Automobile Liability Insurance (CAL PART) form. However, Aetna contends that its policy clause VI is replaced by its Endorsement 37, which states that if any other valid and collectible insurance applicable to any loss covered by the policy is available to the insured, the Aetna insurance is excess of such insurance, unless the other insurance specifically applies as excess over the Aetna policy. In any event, whether clause VI is superseded by Endorsement 37 or not, we find that Aetna's coverage is excess only if there is other valid and collectible insurance applicable.

The U.S. Fire policy involved in *Liberty Mutual* provided that it was excess of any other insurance. By contrast, the U.S. Fire policy in our case states, in Endorsement No. 2, that it covers "regardless of the existence of other insurance that would apply on the same basis." However, Condition K of the U.S. Fire policy before us indicates that the policy operates in excess of any other valid and collectible insurance that may be available. In any event, it is clear that the U.S. Fire policies in *Liberty Mutual* and in the case before us do not contain the same "other insurance" language.

In *Carrabba*, a driver of a vehicle died as a result of a collision with a tractor-trailer. His widow sued the driver of the tractor-trailer, the driver's employer, and the owner of the tractor. Gulf Insurance insured the driver and the employer; Employers Casualty insured the tractor owner. Additionally, the tractor owner carried an umbrella policy issued by Mission Insurance. Employers, Mission, Gulf, and the driver's employer participated in a settlement with the widow. However, the settling parties disagreed over the priority of the various insurance coverages, and brought a declaratory judgment action. The trial court in *Carrabba* granted a summary judgment on

the issue of priority and ordered liability to be assessed against Employers, Gulf, and Mission, in that order. The summary judgment was appealed, and the appellants argued that Gulf (the employer's primary insurer) should not contribute to the settlement until both the Employers (primary insurer of the tractor owner) and Mission (umbrella insurer of the tractor owner) policies were exhausted.

It was undisputed that Employers, as provider of the primary coverage for the tractor owner, was liable before any excess coverage. The main issue was one of priority between Gulf's policy, with a non-owned vehicle endorsement limited by an excess clause, and Mission's umbrella policy. The Gulf policy's "excess insurance" clause stated, in an endorsement covering hired vehicles, that the insurance provided by the endorsement would be excess of any other valid and collectible insurance. The Mission policy was specifically titled an "umbrella" policy, and further stated that it would be excess of any other valid and collectible insurance. The Fourteenth Court held that, where an umbrella policy provided coverage for a loss in excess of the underlying policies listed in its schedule *and* in excess of the applicable limits of any other underlying insurance collectible by the insured, all such other collectible insurance must be exhausted before liability attached under the umbrella policy. 742 S.W.2d at 715.

However, we note, as we did with respect to *Liberty Mutual,* that there are significant wording differences between the umbrella policy involved in *Carrabba* and the one in the case before us. We do not read *Carrabba* or *Liberty Mutual* as saying that any umbrella policy automatically overlays every applicable primary policy that contains an "other insurance" clause. The outcome depends on the wording of the umbrella policy.

■ Insurance policies are contracts and are governed by the rules of interpretation generally applicable to contracts. *See General Am. Indem. Co. v. Pepper,* 161 Tex. 263, 264, 339 S.W.2d 660, 661 (1960). The

policy must be viewed in its entirety, and effect must be given to all its provisions, where that may be done without violence to ordinary rules of law or construction. *See United Am. Ins. Co. v. Selby,* 161 Tex. 162, 168, 338 S.W.2d 160, 164 (1960). An endorsement to a policy prevails over inconsistent printed provisions of the policy. *See Mutual Life Ins. Co. v. Daddy\$ Money, Inc.,* 646 S.W.2d 255, 259 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

■ The parties in our case stipulated to the U.S. Fire policy, and it forms part of the record. It is entitled "Excess Insurance Policy"; it is not denominated as an "umbrella" policy, as was the Mission policy in *Carrabba.* The policy period ran from August 24, 1981 to April 1, 1982, with coverage on products and completed operations extended for one year from April 1, 1982. The policy consists of declarations, nine numbered endorsements, a pre-printed nuclear exclusion endorsement, and a pre-printed form containing the insuring agreement and conditions. Endorsement No. 1, which specifies the underlying insurance, lists only the Highlands policy and refers to no "other valid and collectible insurance." Endorsement No. 8 provides that the policy applies only with respect to "liability arising from ICI Americas, Bayport, Texas Plant, Job No. 34–1286." The U.S. Fire policy thus applies only to one specific project then being performed by Brown & Root, not to the operations of Brown & Root generally.

We find that the U.S. Fire policy is not the kind of "umbrella" policy that comes into play only when all other valid and collectible insurance has been exhausted. Instead, it applies when its underlying insurance has been exhausted.

The texts of U.S. Fire's Condition K and Endorsement No. 2, fully set out earlier, are clearly inconsistent. Condition K provides that if other valid and collectible insurance is available to the insured, the policy operates in excess of such insurance. Endorsement No. 2 provides that the policy applies regardless of the existence of other insurance that would apply on the same basis. Endorsement No. 2 is not a pre-printed form. Moreover, it specifically states that it is issued "in consideration of the premium charged." Therefore, it prevails over Condition K. *Mutual Life Ins. Co.,* 646 S.W.2d at 259. If Endorsement No. 2 had not been added, and if the policy had some of the other characteristics of an "umbrella" policy, we would be faced with a policy substantially similar to those in *Liberty Mutual* and *Carrabba.* In those cases, the umbrella policy was found to be excess, not only of specified underlying insurance, but of a primary policy with an "other insurance" clause. The same result would be incorrect here because the U.S. Fire policy in question is not the same kind of umbrella policy and the wording of its "other insurance" clause (Endorsement No. 2) is substantially different. We find that the U.S. Fire policy, for these reasons, applies "on the same basis" as the "other insurance" clause (Endorsement No. 37) of the Aetna policy. Therefore, the trial court did not err, as a matter of law, in finding that Endorsement No. 2 of the U.S. Fire policy superseded that policy's Condition K, and that the Highlands and U.S. Fire policies provide coverage before any contribution by the Aetna policy.

Appellant's point of error is overruled.

We affirm the judgment of the trial court.