In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-01-01040-CV

____________


VICTOR M. ZURITA, D.D.S., INDIVIDUALLY AND D/B/A HEIGHTS
MEDICAL AND DENTAL CLINIC, Appellant


V.


FERNANDO LOMBANA, M.D. AND HOUSTON MEDICAL AND DENTAL
CENTER CORP., Appellees






On Appeal from the 164th District Court 

Harris County, Texas

Trial Court Cause No. 99-48871 






O P I N I O N

 Appellant, Victor M. Zurita, D.D.S. ("Landlord"), appeals a summary judgment
rendered in favor of appellees, Fernando Lombana, M.D. and Houston Medical and
Dental Center Corp. ("Tenant"), in a breach-of-contract claim arising out of Tenant's
lease of office space from Landlord. (1) On appeal, Landlord argues that the trial court
erred in (1) granting Tenant's motion for partial summary judgment on liability; (2)
denying Landlord's motion for summary judgment; (3) awarding lost profit damages
because there was no evidence to support the jury's award; (4) allowing Tenant's
expert to testify concerning lost profits and in admitting the written summary of his
testimony into evidence; and (5) awarding Tenant's attorney's fees. We reverse the
judgment and render a judgment that Tenant take nothing from Landlord.

BACKGROUND 

Historical Facts

 Landlord owns the Yale Clinic, an office building in Houston's Heights area. 
Landlord ran his dental practice out of the Yale Clinic and built out a medical clinic
in the same location. In April 1996, Tenant approached Landlord about leasing space
at the Yale Clinic for his pediatric practice. Although Landlord and Tenant handled
specific lease negotiations themselves, the majority of the lease was a form lease. 
Landlord and Tenant modified the lease by deleting inapplicable or changed
conditions and added their own language to complete their agreement. 

The Lease

 The parties entered into a three-year lease beginning June 1, 1996. Landlord
granted Tenant an option to extend the lease for two subsequent five-year periods
after the initial term expired. The leased premises included approximately "1,351
square feet and pharmacy." The word "pharmacy" was hand-written into both the
premise description and "uses" sections of the lease, and the word was also present
on the schematic drawing of the clinic. Rent was due on the first of the month and
subject to annual increases, based on adjustments in the cost of living. (2)

 The lease contained the following obligation by Tenant:

 Tenant agrees not to-

 6. Assign this lease or sublease any portion of the premises
without Landlord's consent.


 The contract also contained the following lease-extension option:


 27. Extension Option. Tenant shall have the option to extend the term
as provided below


 Landlord grants Tenant an option to extend the term for two five-year options. 


 Tenant's rights under this option shall terminate if (1) the lease
or Tenant's right to possession of the premises is terminated, (2)
Tenant assigns its interest in the lease or sublets any portion of
the premises, (3) Tenant fails to timely exercise the option, or (4)
default exists at the time Tenant seeks to exercise the option.


 . . . 


 1. During the additional term the lease shall continue as written.


 2. The option to extend for the additional term shall be exercised
by a written notice delivered to Landlord ninety days before the
termination date.


(Emphasis added.)


The Rent Dispute and Eviction

 The initial lease ended on May 30, 1999. Over 90 days before the termination
date of the lease, Tenant purported to exercise his option to extend the lease by
sending written notice to Landlord. Landlord asked for an additional $1,200.00 rent
per month, which Tenant refused to pay. In June, July, August, and September of
1999, Tenant delivered monthly rental checks of $1,800.00 to Landlord. Landlord
held, but did not cash, these checks. Landlord filed eviction proceedings against
Tenant in September and was awarded possession of the premises, after which
Landlord cashed the checks he had been holding.


The Lawsuits

 After he was evicted, Tenant sued Landlord for breach of contract, fraud, and
negligent misrepresentation. Tenant moved for summary judgment, contending that, 
under the terms of the contract, he had validly exercised the extension option. 
Therefore, Tenant argued, the eviction was improper. Landlord responded and filed
his own motion for summary judgment, claiming that Tenant had no right to extend
the term of the lease because Tenant's rights to exercise the extension option had
terminated when Tenant subleased a portion of the premises to a pharmacist. (3)

 The trial court granted Tenant's motion for partial summary judgment on the
issue of liability, denied Landlord's motion, and held a jury trial on the issue of
damages. The jury awarded Tenant $950,000 in lost profits, $92,600 in
miscellaneous damages, and $450,000 in attorney's fees. This appeal followed.

SUMMARY JUDGMENT

 In issues one and two, Landlord claims the trial court erred in granting partial
summary judgment on liability in favor of Tenant and in denying his own motion for
summary judgment. Specifically, Landlord contends that Tenant had no right, as a
matter of law, to extend the term of the contract.

Standard of Review

 To prevail on a motion for summary judgment, a movant must establish that
there is no genuine issue of material fact and that the movant is entitled to judgment
as a matter of law. Tex. R. Civ. P. 166a(c). When reviewing a summary judgment,
we must accept as true evidence in favor of the nonmovant and indulge every
reasonable inference and resolve all doubts in the nonmovant's favor. Randall's
Food Mkts, Inc., v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).

Lease-Extension Option

 The sole issue presented for our review is whether Tenant had a right to
exercise the extension option in the lease or whether he had forfeited that right by
subleasing a portion of the premises. (4)
 

 A court's primary concern in construing a written contract is to ascertain the
true intent of the parties as expressed in the instrument. Nat'l Union Fire Ins. Co. v.
CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). If an instrument is worded so that
it can be given an exact or certain legal interpretation, the instrument is not
ambiguous, and a court can construe the contract as a matter of law. La. Natural Gas
Pipeline, Inc. v. Bludworth Bond Shipyard, Inc., 875 S.W.2d 458, 461 (Tex.
App.--Houston [1st Dist.] 1994, writ denied). Absent a finding of ambiguity, a court
must interpret the meaning and intent of any contract from the four corners of the
document without the aid of extrinsic evidence. Carrabba v. Employers Cas. Co.,
742 S.W.2d 709, 716 (Tex. App.--Houston [14th Dist.] 1987, no pet.). We are
obliged, if possible, to give effect to all the terms of a contract so none will be
rendered meaningless. Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462,
464 (Tex. 1998). Parties to an instrument are presumed to intend every clause to have
some effect or to evidence their agreement, and a reasonable interpretation of an
agreement is preferred to one that is unreasonable. See Westwind Exploration, Inc.
v. Homestate Sav. Ass'n, 696 S.W.2d 378, 382 (Tex. 1985).

 With these principles in mind, we turn to the contract in this case. We hold that
the extension option was not valid and enforceable because of Tenant's sublease to
the pharmacy. The language of the extension option expressly provides, "Tenant's
rights under this option shall terminate if . . . Tenant assigns its interest in the lease
or sublets any portion of the premises."

 The undisputed summary judgment evidence shows that Tenant sublet a
portion of the premises to the pharmacy without the Landlord's written consent. As
we stated earlier, the issue of whether the Landlord ratified the sublease is not before
us. The extension option does not contain any notice provision, nor does it provide
an opportunity for Tenant to cure by terminating the sublease. The option provides
only that the option "shall terminate" once the Tenant enters a into sublease.

 This language of the extension option is different from that of the default
provision of the lease itself. The default provision of the lease provides as follows:

 10. Defaults by Tenant are (a) failing to pay timely rent, (b) abandoning
or vacating a substantial portion of the premises, or (c) failing to comply
within 10 days after written notion with any provision of this lease
[including presumably, the no-sublease provision] other than the
defaults set forth in (a) and (b) above. 


(Emphasis added.)


 Therefore, under the terms of the original lease, the Tenant would have been
given 10 days to cure a default caused by violating the sublease provision. However,
as we stated above, the extension option did not contain a notice-of-default provision. 
Instead, it provided that the option terminated automatically once the Tenant entered
into a sublease.

 We must presume that the parties to the contract intended a different result by
providing a notice of default provision under the original lease, but excluding such
a provision under the extension option. Therefore, we hold that the extension option
terminated in 1997, when Tenant first entered the subcontract. The three-year
original term, however, continued because Tenant was never given a 10-day notice
of default. Therefore, once the original term of the contract had expired, the lease
contract was terminated, and Tenant could not exercise the extension option.

 Accordingly, the trial court erred by granting Tenant's motion for summary
judgment on liability. We reverse the judgment and render judgment that Tenant take
nothing from Landlord.

 In light of our disposition of points of error one and two, we need not address
the remaining points of error and decline to do so.





 Sherry J. Radack


 Justice


Panel consists of Justices Nuchia, Jennings, and Radack.

 

Do not publish. Tex. R. App. P. 47.



 
1. After summary judgment was rendered, the case proceeded to a jury trial on the
question of damages only. The jury awarded Tenant miscellaneous damages
and lost-profit damages totaling $1,042,600.00 and attorney's fees in the
amount of $450,00.00. The trial court's final judgment included these damages
and an additional $211,659.24 in pre-judgment interest. 
2. Beginning two years from the commencement of the lease, the base rent was
subject to annual adjustment. Adjustments were calculated by multiplying the
base rent by a fraction, the numerator of which was the current index number
and the denominator of which was the index number for the first month of the
first year of the term. Index numbers were those reported in the Consumer
Price Index, issued by the Bureau of Labor Statistics.
3. The record shows that from 1997 until he was evicted, Tenant subleased a
portion of the premises to a pharmacy that operated in the Yale clinic. Tenant,
however, never obtained Landlord's written consent to the sublease.
4. We note that Tenant argues at length in his brief that Landlord was aware of
the sublease between Tenant and the pharmacy and that Landlord permitted the
sublease to continue by accepting lease payments. However, the record shows
that Tenant did not plead the legal theory of ratification, nor did he urge
ratification as a ground for summary judgment. Therefore, the issue of whether
or not the Landlord was aware of, and ratified, the sublease is not before us. 
Instead, we decide only whether, under the express terms of the contract,
Tenant had a right to extend the lease.