NO. 07-05-0327-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JUNE 14, 2007
_____

PETRO PRO, LTD., L&R ENERGY CORPORATION, NANCY WILSON BRISCOE, JUDITH BROCK SEITZ, AND CAROLYN ROGERS, APPELLANTS

V.

UPLAND RESOURCES, INC., KCS RESOURCES, INC., GREAT LAKES ENERGY PARTNERS, L.L.C., AND STEVE ZEMKOSKI, APPELLEES
_____

FROM THE 31ST DISTRICT COURT OF ROBERTS COUNTY;

NO. 1893; HONORABLE STEVEN R. EMMERT, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**CONCURRING AND DISSENTING OPINION**

There is much in the Court's opinion with which I agree.  I do not quarrel with the Court's discussion of the nature of our task, or with its conclusion that the wellbore assignments are unambiguous.  I join in the Court's disposition of Petro's claims of trespass, bad faith trespass, conversion, and money had and received, and of Petro's request that production proceeds of the Skeeterbee wells be placed in the registry of the court.

With regard to the declaratory relief, I agree also that the trial court did not err by rejecting Petro's expansive view of its rights under the assignments. I further agree with my colleagues that the Intervenors' declaratory judgment position relying on Railroad Commission well density rules is not persuasive.

My difference with the Court involves its conclusion that the language used by the parties in the wellbore assignments reflects their intention that the assignee was conveyed the right to recomplete the King "F" No. 2 well in the Brown Dolomite formation. From the language used in these assignments, I would not find the parties intended both the assignor and assignee to have the right to produce gas from the same formation.

The Court properly begins its analysis with the axioms that in Texas an oil and gas lease is held to convey a determinable fee, vesting the lessee with title to oil and gas in place, *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex. 1982); *W. T. Waggoner Estate v. Sigler Oil Co.*, 188 Tex. 509, 19 S.W.2d 27, 28 (Tex. 1929), and that an assignment of an oil and gas leasehold is similarly treated, *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 80 (Tex. 1989). As the Court ultimately construes the assignments, however, Petro was assigned the leasehold right to recomplete the King "F" No. 2 well for the purpose of producing gas from the Brown Dolomite formation but the assigned right was not accompanied by any ownership interest in the gas outside the confines of the wellbore. Rather than concluding the parties intended to grant Petro the right to recomplete the well to produce gas it does not own, I would construe the assignments' language in a manner consistent with our state's ownership-in-place theory.

My conclusion is that the trial court was correct to adopt the position asserted by Upland.[1] With respect to the leasehold rights that were at issue before the trial court, I would enter judgment declaring that the assignments in question did not convey the right to recomplete the King "F" No. 2 well for production of gas from the Brown Dolomite formation.[2] To the degree the Court's judgment is otherwise, I respectfully dissent.


James T. Campbell
Justice

---

[1] The court expresses the concern that adoption of Upland's position requires us to imply language the assignments do not contain. I do not agree. By the assignments, the assignee received all the assignor's right, title and interest in and to the leases, "insofar and only insofar as said leases cover rights in the wellbore of the King 'F' No. 2 well." It seems to me we do not read language into the assignments merely by acknowledging the undisputed, and indisputable, fact that the well referred to in the assignments as the King "F" No. 2 (but not further identified or described in the assignments) is a well producing only from the Lips, West (Cleveland) Field. *See, e.g., Texas Pac. Coal & Oil Co. v. Masterson*, 160 Tex. 548, 334 S.W.2d 436 (Tex. 1960) (court's construction of unambiguous deed included references to stipulated facts).

[2] Although title to gas in the Cleveland formation is not at issue, Upland's brief acknowledges that the assignments conveyed the "Cleveland Zone which was then open to production in the wellbore . . . ."