**Opinion issued March 12, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00438-CV

———————————

## DON R. JOHNSON AND FREDDIE L. OLIVER, Appellants

## V.

## TEXAS SERENITY ACADEMY, INC. D/B/A TEXAS SERENITY ACADEMY CHARTER SCHOOL, Appellee

On Appeal from the 215th District Court
Harris County, Texas
Trial Court Case No. 2010-78587

## MEMORANDUM OPINION

This case arises from a dispute between the board of directors of a not-for-profit corporation and one of its co-founders. Texas Serenity Academy, the corporation, operates a state-chartered, open-enrollment school. Don Johnson, the

co-founder, also had served as superintendent and board president. The suit arises from Johnson's conduct while in office and his interference with the school's operations and finances after resigning his positions.

Don Johnson and Freddie Oliver, Johnson's assistant, appeal the trial court's summary judgment in favor of Academy. Johnson and Oliver contend that the trial court erred in granting relief to Academy, based on its claims for injunctive relief, fraud, and breach of fiduciary duty, and in awarding compensatory and exemplary damages and attorney's fees. We affirm in part and reverse and remand in part.

### Background

Texas Serenity Academy Charter School is an open-enrollment charter school pursuant to Chapter 12 of the Texas Education Code. Academy is a non-profit charitable corporation governed by a board of directors and incorporated under Texas law to operate the school under a contract for charter granted by the Texas State Board of Education.

In 2006, Johnson served as both superintendent of the school and chairman of the Academy board of directors.[1] In May 2006, Johnson accepted a $208,000 loan, purportedly on behalf of Academy, from Vernon Huggans. Johnson signed a loan agreement designating Academy as the recipient of the proceeds from the loan. Johnson received the cash in installments from Huggans, but he did not

---

[1] The record refers to the position as "chairman" or "president," titles which, for the purpose of this dispute, are interchangeable.

2

deposit the money in an Academy bank account, refused to account for the funds, and did not make any payments on the loan. Academy ultimately repaid Huggans for the loan and a transaction fee—a total of $249,600—despite not having received any benefit from it.

In 2007, Johnson resigned as superintendent but remained on the board of directors, serving as its president. In exchange for his resignation, Johnson demanded more than $200,000 from Academy in the form of a "buyout" agreement. At that time, Academy was in a dire financial condition: it was borrowing funds to keep its doors open and was unable to make payments on outstanding loans. Because of these problems, the Texas Education Agency (TEA) appointed a monitor for Academy's instructional program. Despite the financial insecurity of the school, Johnson accelerated the school's payments on his "buyout"; from October 2007 to May 2008 Johnson extracted $243,000 in payments.

In June 2008, Johnson wrote to Academy's board of directors, informing them that he had resigned from the board. Shortly afterward, however, Johnson contacted the school and stated that he was still a board member by virtue of having been a founder. He attempted to establish and operate a competing board.

Because of the school's continuing academic and financial problems, the TEA monitor became the conservator in November 2008. On March 21, 2009, the

TEA conservator, pursuant to her authority, called a board meeting for Wednesday, March 25. The day before the scheduled meeting, Johnson submitted a written resignation letter, which he addressed to the TEA commissioner. The text of the resignation letter reads:

> It is with great sorrow that I must inform you that effective immediately I resign as Chairman of the Board of the Texas Serenity Academy, Corporation Governing Board. It is my view that my resignation at this time is in the best interest of the Charter School and due to my failing health.
>
> I have enjoyed being the founder and Chairman. I have immensely enjoyed representing the wonderful students, parents, faculty and staff over the years. I will not stand in the way of the present leadership.

The letter shows that it was copied to, among others, the secretary of Academy's board and the school superintendent. Johnson also attached the letter to an email he sent to Academy's interim board president and the board president.

When Johnson resigned, he was aware that Academy owed a $300,000 IRS lien and was obligated to return $600,000 to the TEA because of irregularities in its attendance reports.

At the March 25, 2009 meeting, which Johnson did not attend, Academy's board of directors issued a resolution accepting Johnson's resignation from the board of directors. It further directed that the TEA receive written notice that "Don R. Johnson is no longer a board member, agent, or duly authorized representative of Texas Serenity Academy, Inc. or Texas Serenity Academy Charter School."

On November 29, 2010, Johnson visited the bank that held Academy's accounts. Representing that he was Academy's agent, Johnson removed the names of its authorized signatories from its existing accounts and opened new accounts. Johnson instructed the officer to open the accounts without funding them, but he could not provide the bank officer with a reason for this deviation from the bank's standard requirement of a $100 deposit for each new account. As the transaction ended, Johnson walked out of and back into the bank building several times. The bank officer became suspicious of Johnson's behavior.

Alerted by the bank, Academy discovered that its accounts had been closed and that its funds were scheduled to transfer from them at midnight. On the advice of a higher-level bank representative, Academy had the accounts frozen so the transfers would not occur. However, Johnson's actions prevented the school from meeting its payroll obligations on November 30.

The day after Johnson's bank visit, Johnson and Oliver, assisted by off-duty police officers and others, entered Academy's campus and forcibly removed administrators and staff from the buildings. They changed the locks on the district office and school campus, disrupting school operations.

Academy brought this suit against Johnson and Oliver, alleging that they had engaged in fraudulent efforts to usurp the school's operations and finances. It applied for and received a temporary injunction prohibiting Johnson from entering

5

the school's premises, holding himself out as an employee, or interfering with its operations. Academy sought declaratory relief and damages for fraud and breach of fiduciary duty. Johnson counterclaimed for defamation and sought a declaration that he served as a member of Academy's board and that Academy's lawsuit violated its charter.

Academy moved for summary judgment. A written opinion from a corporate governance expert accompanied Academy's summary-judgment motion. Based on his review of the corporate by-laws, board meeting minutes, and other evidence, including interviews with Academy board members and others, the expert opined that Johnson's June 2008 resignation "had the effect of permanently and decidedly separating [Johnson] from any official capacity with [Academy]." Further, the expert opined that, while superfluous, Johnson's March 2009 resignation letter "clearly referenced him resigning from the Corporation Governing Board, which further solidifies the fact that he should have no post-March 2009 rights or privileges with the Academy."

The expert also concluded that

- The $200,000 "buyout" Johnson sought after resigning from the superintendent position was an uncommon benefit in the non-profit sector and "put the Academy at some financial risk." The expert also observed that Johnson "apparently broke the terms of the buyout, which called for payments to be made over two years to protect the financial health of the Academy, by taking it upon himself to draw up

6

checks to himself over the course of several months instead of two years."

- Johnson's November 2010 attempt to withdraw funds from the Academy's bank account is "indicative of an individual who sees himself more as an owner of the organization rather than a trustee."

- Johnson's involvement in forcibly removing the school administration in November 2010 "without making arrangements for substitute leadership is yet another indication that Mr. Johnson is more interested in his own claims to the organization than in the success of the school itself."

Johnson and Oliver did not respond to Academy's summary-judgment motion or appear for the hearing on the motion. The trial court granted the motion, specifically finding that Johnson breached his fiduciary duty to Academy and that both Johnson and Oliver had committed fraud. The order declares that "Johnson is not a current member of the Texas Serenity Academy, Inc. Board of Directors, and was not a member of the Texas Serenity Academy, Inc. Board of Directors on November 29, 2010, nor at any time subsequent to March 24, 2009." The court awarded compensatory damages of $249,600 against Johnson and exemplary damages of $200,000 against Johnson and Oliver, jointly and severally, as well as attorney's fees and pre- and post-judgment interest on the compensatory damage award.

When Johnson did not appear for the scheduled docket call a week later, the trial court granted Academy's motion to dismiss Johnson's counterclaims with prejudice.

## Discussion

## I. Standing

Liberally construed, Johnson and Oliver's pro se brief[2] brings a challenge to Academy's "standing" to bring this suit. Specifically, Johnson and Oliver challenge the board's selection process for obtaining counsel and the consequent authority of Academy's counsel to represent it in this proceeding. "Standing," as used by Johnson and Oliver, is a misnomer. The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome. *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Johnson and Oliver challenge the validity of counsel's appointment based on issues of corporate governance; they do not dispute that Academy has a stake in the outcome of the proceeding. While standing directly affects whether a court has subject-matter jurisdiction over a dispute and may be raised at any stage of the proceedings, Johnson and Oliver's collateral attack on the validity of Academy's appointment of counsel may not.

---

[2] Both Johnson and Oliver signed the brief pro se. *See* TEX. R. APP. P. 38.9; *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (citing *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997)).

8

This issue was not timely raised or decided in the trial court. As a result, we do not consider it here. *See* TEX. R. APP. P. 33.1.

## II. Challenges to Temporary Injunctive Relief

Johnson and Oliver complain that the trial court erred in granting a temporary restraining order and a temporary injunction in favor of Academy. The temporary injunction is unreviewable for two reasons: (1) through counsel, all parties agreed to it, and (2) the trial court has already entered a final judgment in this case, rendering the temporary relief inoperative. When a temporary injunction becomes inoperative, the issue of its validity is moot. *See Perry Bros., Inc. v. Perry*, 734 S.W.2d 211, 212 (Tex. App.—Dallas 1987, no writ); *Tex. City v. Cmnty. Pub. Serv. Co.*, 534 S.W.2d 412, 414 (Tex. Civ. App.—Beaumont 1976, writ ref'd n.r.e.). We may not review a temporary injunction that is moot because such a review would constitute an impermissible advisory opinion. *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex.1999).

## III. Timing of Summary Judgment Hearing

According to the record, Academy served Johnson and Oliver on April 2, 2014 with a notice that the summary-judgment motion was set for a hearing six weeks later, on May 16th. Johnson admitted that he received an email with an attached PDF file entitled "the Academy Motion for Summary Judgment" on April 3rd, but he claims he could not open the PDF file. Johnson did not suggest that he

9

lacked timely notice of the hearing date; he filed a notice of hearing on the same date for one of his own motions. Nor does Johnson claim that he was unable to retrieve the electronically-filed motion from the court clerk's website.

On April 29, 2014, Johnson filed a letter with the trial court complaining that he could not open the summary-judgment motion PDF file that he had received from Academy's counsel. In an affidavit addressing the issue, Johnson explained that on April 15th, he asked Academy to send him a copy of the motion by regular mail; he received the mailed copy on April 25th. He asked the trial court to disregard Academy's certificate of service. The record does not show that Johnson moved for a continuance of the summary-judgment hearing to allow him additional time to file a response. Nor did Johnson offer any explanation for his delay in obtaining the motion.

Johnson did not file a response to Academy's motion. He did not appear for the hearing on either the summary judgment motion or his own motion. Johnson filed a late response to Academy's motion on May 19th, three days after the hearing and the day that the trial court entered its summary judgment. Johnson did not request leave of the trial court to file a late response. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) ("Summary judgment evidence may be filed late, but only with leave of court."). The record is devoid of any

10

explanation for Johnson's failure to appear at the hearing or his failure to file a timely response.[3]

Courts hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Washington v. Bank of N.Y.*, 362 S.W.3d 833, 854 (Tex. App.—Dallas 2012, no pet.). To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel. *Shull v. United Parcel Serv.*, 4 S.W.3d 46, 53 (Tex. App.—San Antonio 1999, pet. denied). The record does not show that Johnson requested any relief to delay consideration of the summary-judgment motion sufficient to make the trial court aware of his complaint, nor did he secure a ruling on any such request. *See* TEX. R. APP. P. 33.1. We hold that, by failing to timely request a continuance or leave to file a late response in the trial court, Johnson waived any complaint that the trial court erred by proceeding with the May 16th hearing on Academy's summary-judgment motion.

## IV. Propriety of Summary Judgment

### A. Right to jury trial

Johnson and Oliver contend that they were entitled to a jury trial on their claims. In civil cases, the constitutional right to a jury trial is not absolute, but

---

[3] Oliver similarly did not file a response to the summary-judgment motion or appear at the hearing.

rather is regulated by those rules that specify its availability. *See Green v. W.E. Grace Mfg. Co.*, 422 S.W.2d 723, 725 (Tex. 1968). Johnson and Oliver rely on *Citizens State Bank v. Caney Invs.*, 746 S.W.2d 477 (Tex. 1988), to claim that they were denied a right to a jury trial on the permanent injunction. Unlike the party in that case, however, neither Johnson nor Oliver perfected his right to a jury trial. *See id.* at 478 ("To exercise his right to a trial by jury, a civil litigant must follow Tex. R.Civ. P. 216 to make application and pay a jury fee no less than ten (10) days before trial.").

Further, summary judgment under Texas Rule of Civil Procedure 166a does not deprive a party of the constitutional right to a jury trial. *See Fid. & Dep. Co. of Md. v. United States*, 187 U.S. 315, 319–21 (1902) (summary judgment does not violate Seventh Amendment); *Lattrell v. Chrysler Corp.*, 79 S.W.3d 141, 150–51 (Tex. App.—Texarkana 2002, pet. denied) (discussing Texas Rule of Civil Procedure 166a(i)). "When a party cannot show a material fact issue, there is nothing to submit to a jury." *Fertic*, 247 S.W.3d at 251. Because summary judgment proceedings address questions of law in absence of material fact disputes, our courts have consistently held that the procedure does not deny a party's right to a jury trial or due course of law. *Id.*; *Lattrell*, 79 S.W.3d at 149; *Carrabba v. Employers Cas. Co.*, 742 S.W.2d 709, 716–17 (Tex.App.—Houston [14th Dist.] 1987, no writ).

**B. Summary judgment standard of review**

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In a traditional motion for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that the trial court must grant a judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). We review the evidence in a light favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

Even without a response, traditional summary judgments must stand on their own merits. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). The nonmovant has no burden to respond to a traditional summary judgment motion unless the movant conclusively establishes its cause of action. *See id.; Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *see also Grace v. Titanium Electrode Prods., Inc.*, 227 S.W.3d 293, 297 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

13

**C. Did Academy meet its burden of proof?**

**1. Permanent injunctive relief**

Johnson and Oliver first challenge the validity of Academy's evidence in support of its request for injunctive relief. Relying on *Kerlin v. Arias*, 274 S.W.3d 666 (Tex. 2008), Johnson and Oliver complain that the affidavits submitted with the initial request for injunctive relief were deficient because the affiants did not swear that the facts presented in the affidavits reflected their personal knowledge. *See id.* at 668. But those affidavits served only as the basis for requesting temporary injunctive relief; in its motion for summary judgment, Academy submitted deposition excerpts and exhibits, new affidavits, and authenticated business records to support its request for permanent injunctive relief. Johnson and Oliver do not raise any substantive objection to the summary-judgment evidence, and they waived any challenge to defects of form by failing to timely object and secure a ruling from the trial court. *See* TEX. R. APP. P. 33.1; *Mansions in the Forest, L.P. v. Montgomery Cnty.*, 365 S.W.3d 314, 317 (Tex. 2012). Johnson and Oliver's remaining complaints about the summary judgment granting Academy's request for declaratory relief rely on Johnson's late-filed evidence, which was not before the trial court and, as a result, does not raise a fact issue controverting the evidence that Academy adduced in support of its claim.

## 2. Proof of breach of fiduciary duty

Johnson and Oliver claim that the trial court erred in granting Academy's summary judgment on its breach of fiduciary duty claim because Academy failed to furnish sufficient evidence and the statute of limitations bars the claim.

A claim that the statute of limitations bars an opponent's cause of action is an affirmative defense. *See* TEX. R. CIV. P. 94. Johnson and Oliver were required to do more than plead limitations in response to Academy's summary-judgment evidence. A pleaded affirmative defense cannot defeat summary judgment without responsive controverting evidence. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 845 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Johnson and Oliver waived any objection to Academy's summary-judgment evidence in support of this claim by failing to timely raise it in the trial court. *See* TEX. R. APP. P. 33.1.

To recover on a breach of fiduciary duty claim, the plaintiff must establish: (1) the existence of a duty—that is, the existence of a fiduciary relationship; (2) a breach of that duty; and (3) damages as a result of the breach. *See Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *see also Trousdale v. Henry*, 261 S.W.3d 221, 228 n.2 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (surveying breach-of-fiduciary duty cases). Academy established in its summary-judgment motion that Johnson, as

15

superintendent and board director, owed Academy a fiduciary duty and that he had responsibility for and control over Academy's management and finances. Among other things, Academy introduced a TEA audit supporting its allegation that Johnson accepted a loan from Huggans on behalf of the school but did not deposit the funds into an Academy account, and he refused to account for expenditure of the funds. Academy was damaged by Johnson's self-dealing because it was required to repay the loan even though it did not receive any benefit from it. Academy also showed that Johnson insisted on a "buyout" agreement and then, contrary to that agreement and in spite of Academy's dire financial condition, he accelerated the timing of the school's payment of the buyout.

This evidence, which is undisputed, satisfies the elements of a breach of fiduciary duty claim. As a result, we hold that the trial court did not err in granting summary judgment on Academy's claim for breach of fiduciary duty.

### 3. Proof of fraud

Johnson and Oliver complain that no evidence supports the summary judgment on Academy's fraud claim. Academy sought relief under a fraudulent misrepresentation theory, based on Johnson's misrepresentation to the bank that he was authorized to act as Academy's agent, and on Oliver's similar misrepresentation to the off-duty police officers who assisted him in removing the Academy staff from their offices. The elements of a fraudulent misrepresentation

16

claim include proof by the plaintiff that (1) the defendant made a material misrepresentation; (2) the representation was false; (3) the defendant knew the representation was false when made or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the defendant made the representation with the intention that it should be acted upon; (5) the representation was in fact justifiably relied upon; and (6) damage to the plaintiff resulted. *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010); *see also Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 575 (Tex. 2001).

Academy adduced evidence that, in November 2010, after Johnson had resigned from the board, he held himself out to a bank employee as a board member with authority to draw on Academy's existing bank accounts and open new Academy accounts. Johnson submitted fraudulent documents to the bank to remove the authorized signatories from Academy accounts, and he opened new accounts in Academy's name. The bank acted upon those requests in reliance on Johnson's misrepresentations. These actions resulted in the freezing of the accounts and the temporary unavailability of Academy's funds for payroll and other purposes. Johnson and Oliver falsely represented that they had the authority to secure the assistance of off-duty police officers and to effect the removal of Academy employees from their offices; together, they changed locks throughout

17

the building. These actions disrupted the school's operations for several days and also prevented Academy from timely meeting its payroll obligations. These uncontroverted facts satisfy the elements of Academy's fraud claim.

Johnson and Oliver misplace their reliance on *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768 (Tex. 2009), in contending that they are entitled to a jury trial on Academy's fraud claim. In that case, the Texas Supreme Court reviewed the legal sufficiency of the evidence presented at trial in support of the jury's verdict on a fraud claim; it did not preclude affirmative relief based on uncontroverted facts and a motion for summary judgment. *See id.* at 774–76. We hold that the trial court did not err in granting summary judgment in Academy's favor on its fraud claim.[4]

### 4. Proof of entitlement to declaratory relief

The final judgment declares that "Don R. Johnson . . . was not a member of Texas Serenity Academy Board of Directors on November 29, 2010, []or at any time subsequent to March 24, 2009." Johnson claims that the trial court erred in granting that declaratory relief because he showed "he was a board member and President of Texas Serenity Academy Inc. on November 29, 2010."

---

[4] Johnson and Oliver also complain about the district clerk's designation of case as a "fraud" claim. This complaint does not involve the appellees and thus is not cognizable. Moreover, an officer of a court is absolutely immune from liability for the services performed for the court. *Dallas Cnty. v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002).

Johnson cites to his own opinion, which was never presented in a timely response before the trial court ruled on Academy's summary-judgment motion. The undisputed evidence before the trial court, which is buttressed by the opinion of a corporate governance expert, proves as a matter of law that on March 24, 2009, Johnson resigned from the board and has not been affiliated with Academy since that date. We hold that the trial court properly made the challenged declaration.

### 5. Proof of damages

Johnson and Oliver complain that the evidence is insufficient to support the trial court's compensatory and exemplary damages award, but their only record reference is to the trial court's final judgment. Johnson and Oliver's brief, with regard to actual and punitive damages, states in its entirety:

> B. The 215th district court abused its discretion by granting Texas Serenity Academy compensatory damages when they did not plead merits that would show loss or injury that is presume to have been foreseen or contemplated by the Appellant/Defendant Johnson and Oliver as a consequence of acting upon the advice of their three attorneys.

> C. The 215th district court abused its discretion by granting Texas Serenity Academy exemplary (or punitive) damages in a motion for summary judgment that was granted with insufficient evidence and without grounds.

> D. The Appellants conduct in this case was neither, outrageous, malicious, nor morally culpable Mr. Johnson and Mr. Oliver simply followed the law as advised by counsel and what they

> personally understood to be incompliance with the law These damages and all interest should be reversed and dismissed.

Because of the limited record reference and lack of citation to authority, we limit our consideration to error that appears on the face of the judgment. *See* TEX. R. APP. P. 38.1(i) (requiring appellant's brief to make appropriate citations to authorities and the record to support contentions); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.) (failure to cite applicable authority waives an issue on appeal); *Richard v. Cornerstone Constructors, Inc.*, 921 S.W.2d 465, 469 (Tex. App.—Houston [1st Dist.] 1996, writ denied) ("[A] point of error unsupported by the citation of any authority presents nothing for this Court to review."); *see also Saudi v. Brieven*, 176 S.W.3d 108, 120 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (holding appellant's failure to cite authority and provide analysis in initial brief waived issue on appeal).

The judgment awards exemplary damages jointly and severally against Johnson and Oliver. The trial court's judgment did not, however, find Oliver liable for any actual damages. A plaintiff must prove a distinct injury with actual damages to support an award of exemplary damages against a defendant. *Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex. 1993). Thus, it was error to assess exemplary damages against Oliver. Further, the joint and several award of exemplary damages to include both Johnson and Oliver violates section 41.006 of the Texas Civil Practice and Remedies Code, which requires that an

20

award of exemplary damages be specific as to each defendant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.006 (West 2015); *Pollitt v. Computer Comforts, Inc.*, No. 01-13-00785-CV, 2014 WL 7474073, at *4 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no pet. h.); *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 224 (Tex. App.—Dallas 2005, no pet.).

We reverse the trial court's summary-judgment award of punitive damages against Johnson and Oliver. Because the brief otherwise contains no citation to authority or to the record for their complaint as to the sufficiency of the damages, we hold that any remaining complaint as to the trial court's award of damages is waived. *See* TEX. R. APP. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994).

### 6. Proof of attorney's fees award

Johnson and Oliver contend that Academy's attorney's affidavit was insufficiently detailed to support the award of attorney's fees, citing *Long v. Griffin*, 442 S.W.3d 253 (Tex. 2014). In *Long*, the Supreme Court characterized the attorney affidavit at issue as "only offer[ing] generalities":

> It indicates that one attorney spent 300 hours on the case, another expended 344.50 hours, and the attorneys' respective hourly rates. The affidavit posits that the case involved extensive discovery, several pretrial hearings, multiple summary judgment motions, and a four and one-half day trial, and that litigating the matter required understanding a related suit that settled after ten years of litigation. But no evidence accompanied the affidavit to inform the trial court the time spent on

21

specific tasks. *See El Apple* [*Ltd. v. Olivas*], 370 S.W.3d [757,] 763
[(Tex. 2012).] The affidavit does claim that 30% of the aggregate
time was expended on the assignment claim (part of which the
Griffins prevailed on) and that the assignment issue was inextricably
intertwined with matters that consumed 95% of the two attorneys'
time on the matter. But without any evidence of the time spent on
specific tasks, the trial court had insufficient information to
meaningfully review the fee request. [*City of Laredo v.*] *Montano*,
414 S.W.3d [731,] 736–37 [(Tex. 2013)]; *El Apple*, 370 S.W.3d at
764.

*Id.* at 255–56.

Based on Academy's attorney's affidavit, the trial court awarded $250,000

in attorney's fees to it. Academy's attorney's affidavit, which covers slightly more

than one page, recites her hourly fee, states that Academy has incurred fees in the

amount of $185,930 through the date of the affidavit's execution, and avers that the

reasonable value of fees that Academy would continue to incur is $50,000 through

entry of judgment; $50,000 through appeal to this court; and $100,000 through

appeal to the Texas Supreme Court, and does not condition the appellate fee

requests on the future outcome of those proceedings. The attorney affidavit

provides less detail than the affidavit that the Texas Supreme Court rejected in

*Long*. It also does not specify the basis for the request, which presumably is under

Chapter 37 of the Civil Practice and Remedies Code. *See* TEX. R. CIV. P. 37.009

(providing for discretionary award of reasonable and necessary attorney's fees for

proceeding under Declaratory Judgment Act). Because the affirmative proof of

reasonable and necessary fees is insufficient to support the fee award, we reverse the award and remand the claim for fees to the trial court for a determination of attorney's fees consistent with *Long*'s requirements.

## V. Dismissal of Counterclaims

Johnson relies on *Alexander v. Lynda's Boutique* to assert that the trial court erred by failing to hold a hearing before dismissing his counterclaims for want of prosecution. 134 S.W.3d 845 (Tex. 2004). "A court may dismiss a case for want of prosecution under either Rule 165a or under its common law inherent authority." *Id.* at 850. Rule 165a(1) of the Texas Rules of Civil Procedure provides that:

> A case may be dismissed for want of prosecution on failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice. . . . At the dismissal hearing, the court shall dismiss for want of prosecution unless there is good cause for the case to be maintained on the docket.

TEX. R. CIV. P. 165a(1).

> On April 2, 2014, the trial court sent a notice to the parties declaring that:

> This case is set for TRIAL for the TWO WEEK PERIOD BEGINNING 06-02-14. If the case has not been reached by the second Friday after this date, the trial will be reset. The PARTIES are ORDERED to appear for DOCKET CALL on 05-27-14 at 9:00 AM.

> Failure to appear for DOCKET CALL will result in your case being DISMISSED FOR WANT OF PROSECUTION or OTHER APPROPRIATE ORDER.

23

As in *Alexander*, the parties in this case were told to appear on a specific day at a specific time and that if they did not, their claims could be dismissed for want of prosecution. Johnson complained in his motion to reconsider that when he tried to confirm the setting he found that it did not appear on the court's website and when he telephoned the trial court the court coordinator also was unable to confirm the date. The trial court warned Johnson that dismissal of his claims could result from a failure to appear on the noticed date, and Johnson also failed to appear for the summary-judgment hearing the previous week. Based on these circumstances, the trial court acted within its discretion when it rejected Johnson's proffered explanation and refused to reverse its dismissal ruling. *See* TEX. R. CIV. P. 165a(1).

## Conclusion

We hold that the trial court did not err in granting summary judgment on Academy's claims for declaratory and injunctive relief, its causes of action for fraud and breach of fiduciary duty, and its claim for actual damages against Johnson. We further hold that the trial court did not err in dismissing Johnson's counterclaims. The trial court, however, erred in imposing punitive damages on Oliver, in failing to individually assess punitive damages against Johnson, and in awarding attorney's fees without sufficient proof. We therefore reverse the punitive damages award and remand for further proceedings to consider the

amount of punitive damages to assess against Johnson only.  We also reverse the award of attorney's fees and remand that claim for further proceedings.  We affirm the remainder of the trial court's judgment.


                                        Jane Bland
                                        Justice

Panel consists of Justices Keyes, Bland, and Massengale.